**[Cite as *Parks v. Parks*, 2020-Ohio-5356.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| POLLY L. PARKS | : | |
| | : | Appellate Case No. 28739 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 2017-DR-875 |
| v. | : | |
| | : | (Domestic Relations Appeal |
| ROGER PARKS | : | from Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of November, 2020.

. . . . . . . . . . .

CHERYL L. WASHINGTON, Atty. Reg. No. 0038012, 10 West Second Street, Suite 2225, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellant

NICOLE RUTTER-HIRTH, Atty. Reg. No. 0081004, 2541 Shiloh Springs Road, Trotwood, Ohio 45426
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Polly L. Parks appeals from a final judgment and decree of divorce issued by the Montgomery County Court of Common Pleas, Domestic Relations Division. Mrs. Parks claims that the trial court erred in failing to grant her a continuance upon allowing Mrs. Parks's counsel to withdraw on the scheduled trial date. Mrs. Parks further claims that the trial court erred in failing to award her $20,000 for equity in the couple's jointly-owned property. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} The parties married on January 20, 1990, and have children together. Mrs. Parks filed a complaint for divorce in October 2017, at which time they had one minor child (born in May 2002).

{¶ 3} The matter initially was set as a non-contested divorce on November 29, 2017. However, Mr. Parks timely filed an answer and counterclaim. Mr. Parks also objected to a temporary restraining order that had been issued to Mrs. Parks, and a hearing on that matter was held on November 21; the court issued a modified temporary restraining order on November 27, 2017.

{¶ 4} The court scheduled a settlement conference for March 6, 2018, and a pretrial conference for April 10, 2018. After the pretrial conference, the court scheduled a final hearing on a non-contested divorce for May 22, 2018. The record does not indicate what occurred on May 22, but a few days later, the court scheduled an interview with the parties' minor child for June 26. The final hearing was rescheduled for August 7, 2018.

{¶ 5} Again, the record does not reflect what, if anything, occurred on August 7,

but on August 9, the court scheduled a telephone pretrial conference for August 23, 2018. On August 27, the court scheduled a telephone pretrial conference for September 13. On September 17, the court scheduled a telephone pretrial conference for September 21. There is nothing in the record between the September 17 scheduling order and February 19, 2019, when the trial court set a telephone pretrial conference for March 6, 2019. On March 7, the court scheduled the final hearing for March 22. On March 28, the final hearing was rescheduled for May 24.

{¶ 6} On April 1, Mrs. Parks filed a motion for a continuance of the March 22 final hearing date, stating that the parties needed "a bit more time to reach a complete agreement on the terms of the divorce."[1] The motion noted that opposing counsel was in agreement and that there had been no prior continuances of this matter. The same day (April 1), the trial court granted the continuance and rescheduled the hearing for May 24, consistent with its March 28 scheduling entry.

{¶ 7} On May 30, the trial court issued an order scheduling a non-contested hearing for July 18, 2019 and/or a trial for October 24, 2019. The following day, the court issued a pretrial order, addressing disclosure of expert witnesses, discovery, the filing of pretrial statements, and the pending issues. The court noted that the parties and the court had a pretrial conference on May 28, during which the parties indicated that issues related to spousal support, retirement, and real estate had not yet been resolved.

{¶ 8} On July 19, the court filed a scheduling entry which changed the non-contested divorce hearing date to August 15; the trial date remained October 24, 2019.

---

[1] It is unclear why Mrs. Parks filed this motion when the trial court had already continued the March 22, 2019 final hearing date.

On August 16, the court scheduled a pretrial conference for the anticipated October 24 trial. In October 2019, both parties filed pretrial statements.

{¶ 9} The parties, with counsel, appeared for trial on October 24, as scheduled. At the beginning of the hearing, Mrs. Park's attorney informed the court that Mrs. Parks had expressed the day before that she did not want counsel to represent her at trial. Counsel indicated that Mrs. Parks believed that counsel had not provided her with pretrial materials.

{¶ 10} The trial court had a discussion with Mrs. Parks about how she wanted to proceed.

THE COURT: You're ready to proceed or do you have another lawyer to come and represent you? Today is the day for trial.

[MRS. PARKS]: Ma'am, I've not received the questionnaire today.

THE COURT: That's not my question. My question to you is this. Are you asking me to let [your attorney] off this case?

[MRS. PARKS]: Well, I don't understand the process, so can I ask you a couple questions?

THE COURT: What do you want to know, ma'am? You knew today was trail [sic] today?

[MRS. PARKS]: Yes, I did.

THE COURT: This case has been pending since 2017.

[MRS. PARKS]: Correct. Too much. I've asked her to get documents from them. We've never had any concrete documents.

THE COURT: Those are not questions. You can request he – you can ask

me a couple questions. I'm going to move forward. This case – this case has been pending for a long period of time. It's been scheduled for trial since at least August of this year * * * so I'm ready to proceed with this case. I've taken my time to hear this case – scheduled to hear this case. [Mr. Park's counsel] has done the same thing. You – all have done the same thing. I'm ready to move forward.

[MRS. PARKS]: I don't have another attorney coming.

THE COURT: Okay. Then you're representing yourself. You want me to let [your attorney] off the case; is that correct?

[MRS. PARKS]: I don't know how to proceed in this. I'm not an attorney. I thought I had one.

THE COURT: Did you hire [your attorney]?

[MRS. PARKS]: Yes, I did.

THE COURT: Okay. Okay. And you figured out yesterday that you –

[MRS. PARKS]: Because she did not get me the documents I needed for today. I've been waiting since last week. That's why I called her. And I talked to her on Monday. She said she would e-mail them.

THE COURT: Ma'am, ma'am, ma'am. As I indicated to you, and everybody knows, this case has been scheduled for trial since at least August 15 of 2019.

[MRS. PARKS]: Right.

THE COURT: It was scheduled for today, October 24th.

[MRS. PARKS]: Right.

THE COURT: You were aware of that, correct?

[MRS. PARKS]: That's right.   You're correct.

THE COURT: And yesterday you contacted [your attorney] and indicated you did not want her to represent you or you had some conversation with her, correct?

[MRS. PARKS]: Yes.   Correct.   Because I tried her [sic] to get me the information.

THE COURT: Okay.

[MRS. PARKS]: So I guess we go forward with her representing me.   I can't represent myself.

THE COURT: Do you have confidence in [your attorney] representing you, ma'am?

[MRS. PARKS]: Not really.

THE COURT: Okay.   So you don't want her to represent you, is that correct?

[MRS. PARKS]: I guess.   Yeah.

THE COURT: I'll allow you to withdraw.

[PLAINTIFF'S ATTORNEY]: Thank you, Your Honor.

(Trial Tr. at 3-6.)

{¶ 11} The trial court confirmed with Mrs. Parks that the issues of parental rights, spousal support, child support, and real estate remained unresolved and were matters for trial.   After Mrs. Parks agreed, the court asked Mrs. Parks to call her first witness. Mrs. Parks called herself.

{¶ 12} Before testifying, Mrs. Parks asked if she could make a motion for a continuance. The court responded, "No," explaining that the case had been continued more than 10 times. The court further stated, "This case has been pending since October of '17. It's not that difficult of a case from the facts that I've been given." Mrs. Parks replied, "Okay. That's fine."

{¶ 13} Mrs. Parks then testified to the grounds for divorce and, upon questioning by the court, the basis for the court's jurisdiction. The trial court then re-confirmed what issues remained; Mrs. Parks indicated that retirement funds also needed to be divided.

{¶ 14} At that juncture, the court ordered a brief recess, asking Mr. Parks's counsel if she was "opposed to going outside for just a moment." Mr. Parks's counsel said that she was not.

{¶ 15} When court resumed, the parties had reached an agreement on the disputed issues. Before having the agreement placed on the record, the court questioned Mrs. Parks about her self-representation:

THE COURT: Polly, you voluntarily came to Court or negotiated this case without an attorney.

[MRS. PARKS]: Yes.

THE COURT: Do you understand you have the right to an attorney?

[MRS. PARKS]: I guess. Yes.

THE COURT: Is it your desire to go forward today representing yourself?

[MRS. PARKS]: Yes.

THE COURT: You've had an opportunity to negotiate this case with [Mr. Parks's attorney]; is that correct?

[MRS. PARKS]: Yes.

THE COURT: We're – in a minute we're going to read the agreement into the record. But you understand and have written down all of the things you agree to?

[MRS. PARKS]: To the best of my knowledge.

THE COURT: And you are ready to go forward today?

[MRS. PARKS]: Yes.

(Trial Tr. at 14-15.)

{¶ 16} The court then addressed both parties, explaining that once the agreement was read, it would ask both parties if this was, in fact, their agreement. The court stated that "[o]nce you say yes, you will be bound by the terms and conditions of the agreement." Mrs. Parks asked if she could have an opportunity for another attorney to review the agreement "before we settle it once and for all." The court responded that Mrs. Parks could take the agreement to anyone she chose, but the agreement would be final once the parties confirmed the agreement in court. Both parties indicated their understanding. The trial court again emphasized that if the parties refused to sign the decree that would be prepared from their agreement, the court would "not go back and undo an agreement." Both parties again expressed that they understood.

{¶ 17} Mr. Parks's attorney read the parties' agreement into the record. With respect to real estate, Mr. Parks's attorney stated:

There are three pieces of property. There's a [B]rownstone property, which wife is going to retain. She will be responsible from this point forward to pay the home equity line and any liabilities on that property. Husband is

going to retain the Rushwood property and he will be responsible for all debts on that property.

There is a property that husband and his family own on [L]ee Hollow and husband will get to retain his interest in that property.

The parties will each sign Quitclaim Deeds quitclaiming their interests in the property that the other is awarded, and all those deeds will be held until such time that Roger is able to secure $25,000 within 120 days at which time he will pay that to wife and then all of the Quitclaim Deeds can be recorded. He's going to pay her, and that represents a settlement for all of the real estate and a prepayment of $5,000 in child support. That is a property settlement to the wife. * * *

(Trial Tr. at 24-25.)

{¶ 18} After the agreement was discussed and stated on the record, the trial court asked Mrs. Parks if she had heard and understood everything stated by Mr. Parks's attorney and if that was, in fact, the agreement; Mrs. Parks responded affirmatively. Mrs. Parks stated that she had no additions, corrections, or clarifications. The court again reviewed with Mrs. Parks that she would be bound by the agreement once she said that this was her agreement. Mrs. Parks again expressed her understanding, that this was her agreement, and that she was asking the court to adopt the agreement. The court asked Mr. Parks the same questions, and he responded similarly.

{¶ 19} On February 13, 2020, the trial court issued its final judgment and decree of divorce. Paragraph 3 addressed the parties' real property. It ordered that Mrs. Parks would retain the Brownstone property and that Mr. Parks would retain the Rushwood and

Lee Hollow properties. The last sentence of paragraph 3 provided: "To offset equity in the property, Roger shall pay Polly a property settlement as stated in paragraph 13 below within one hundred twenty (120) days." Paragraph 13 stated, in its entirety:

13. Property Settlement: to offset equity in real estate, and specifically Roger's Lee Hollow property, and as prepayment of child support in the amount of $5,000, within one hundred twenty (120) days, Roger shall secure a loan or other means to pay Wife $25,000 as a property settlement. This represents $20,000 in equity in real estate and $5,000 for child support (calculated at a rate of $300 per month for 18 months until the child emancipates). At the time of the payout, Quit Claim Deeds for all pieces of real estate must be recorded.

{¶ 20} Mrs. Parks appeals from the trial court's final judgment and decree of divorce, raising two assignments of error.

## II. Continuance / Self-Representation

{¶ 21} In her first assignment of error, Mrs. Parks claims that "the trial court erred in refusing to grant [Mrs. Parks's] request for a continuance and forcing her to represent herself at the divorce hearing unaided by counsel."

{¶ 22} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). Therefore, an appellate court must not reverse a trial court's decision to deny a motion for continuance unless it finds that the trial court abused its discretion. *Id.*; *Frodyma v. Frodyma*, 2d Dist. Greene No. 2013-CA-40, 2014-Ohio-953, ¶ 26. The term "abuse of discretion" implies that the court's attitude is unreasonable,

arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 23} When ruling on a motion for a continuance, "[t]he court must balance the needs of its docket against the possible prejudice to the party requesting the continuance if it's denied." *Kelly v. Kelly*, 2d Dist. Montgomery No. 19263, 2003-Ohio-612, ¶ 15. A court should consider (1) the length of the delay requested, (2) whether other continuances have been requested and received, (3) the inconvenience to litigants, witnesses, opposing counsel and the court, (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived, (5) whether the movant contributed to the circumstance which gave rise to the request for a continuance, and (6) other relevant factors, depending on the unique facts of each case. *Frodyman* at ¶ 27, citing *Unger* at 67-68. We previously have held that it does not constitute an abuse of discretion for a trial court to deny a motion for continuance filed on the day a trial is scheduled to begin. *Id.*, citing *State v. Pigg*, 2d Dist. Montgomery No. 25549, 2013-Ohio-4722, ¶ 18.

{¶ 24} In this case, Mrs. Parks requested a continuance at the beginning of the scheduled trial, despite her acknowledgment to the court that she knew trial was scheduled for that day. Mr. Parks and his attorney had appeared for trial and were prepared to proceed with a contested divorce. Mrs. Parks and her attorney both stated to the trial court that Mrs. Parks had told her attorney that she (Mrs. Parks) no longer wanted her attorney to represent her, a decision she had made the day before. Mrs. Parks had not arranged for another attorney, and she did not request a continuance for a particular length of time. The trial court could have reasonably concluded that the needs

of its docket and the prejudice to Mr. Park and his attorney weighed heavily in favor of denying the continuance.

{¶ 25} Mrs. Parks argues that she requested the continuance for a legitimate reason. Mrs. Parks told the court that she had lost confidence in her attorney because she had not received documents that Mrs. Parks had asked her attorney to provide to her. Mrs. Parks suggests on appeal that her attorney's conduct during the representation violated three of Ohio's Rules of Professional Conduct. However, Mrs. Parks's attorney disputed Mrs. Parks's claim, telling the trial court that she had sent Mrs. Parks the pretrial materials.

{¶ 26} Mrs. Parks acknowledges that the case had been pending for a long time, but she asserts that the trial court had continued the case sua sponte several times. She notes that she had previously requested a continuance once, in April 2019, to allow the parties to attempt to negotiate a settlement. Mrs. Parks argues that she "should not be faulted for [the trial court's] unilateral rescheduling of the divorce hearing to repeatedly accommodate its own schedule."

{¶ 27} The record does not reflect how many conferences actually were held between the court and the parties during the pendency of the case,[2] nor does the record explain the reasons for the scheduled pretrial conferences. The trial court reasonably noted that the case had been pending for a significant period of time without the parties' reaching a resolution on several issues.

{¶ 28} Mrs. Parks emphasizes that she was prejudiced by the trial court's denial of

---

[2] Mr. Parks claims in his appellate brief that there were nearly a dozen telephone conferences.

a continuance, because it required her to proceed without counsel, to her detriment. She notes that she expressed to the trial court that she was not confident in her ability to represent herself. Mrs. Parks states in her appellate brief that her husband had a "decided advantage, as undecided issues remained concerning the settlement agreement, and [she], a layperson, faced an experienced negotiator in trying to work out the details." Mrs. Parks cites to case law concerning the right to counsel in criminal cases.

{¶ 29} A party to a divorce action does not have a guaranteed right to counsel in a domestic relations proceeding. *E.g.*, *Wielgus v. Wielgus*, 8th Dist. Cuyahoga No. 95214, 2011-Ohio-1569, ¶ 11; *Rue v. Rue*, 169 Ohio App.3d 160, 2006-Ohio-5131, 862 N.E.2d 166, ¶ 65 (2d Dist.). While it may be unwise for a party to a divorce action to proceed pro se, Mrs. Parks had been represented by counsel for approximately two years and had decided, the day before trial, that she no longer wanted her attorney to represent her. Given the timing of Mrs. Parks's decision regarding her attorney and of her request for a continuance, the trial court did not abuse its discretion in denying the continuance, even though the result of that decision meant that Mrs. Parks proceeded pro se.

{¶ 30} Mrs. Parks's first assignment of error is overruled.

### III. Property Settlement

{¶ 31} In her second assignment of error, Mrs. Parks claims that "the trial court erred in failing to grant [Mrs. Parks's] marital equity in jointly-owned property." Mrs. Parks asserts that the trial court's judgment and decree of divorce did not provide her $20,000 for her equity in the Rushmore property and that the judgment needs to be corrected to credit her with that amount.

{¶ 32} The record belies Mrs. Parks's claim that she was not properly credited with $20,000 representing her equity in marital property. The parties' agreement, as stated in the October 24 transcript, indicates that Mr. Parks agreed to pay $20,000 to Mrs. Parks as "a settlement for all of the real estate." That agreement was incorporated into the final judgment and decree of divorce in paragraphs 3 and 13.

{¶ 33} Mrs. Parks cites to portions of the October 24 transcript that discussed the mechanics of that payment and the recording of deeds. Specifically, she references the following discussion:

[MR. PARK'S COUNSEL]: * * * Each party's going to retain any liabilities for the real estate which they are awarded. Husband will be taking her name off of any – is she's [sic] on the mortgage or home equity line?

[MR. PARKS]: Yes.

[MR. PARK'S COUNSEL]: For your property?

[MR. PARKS]: Yes. I just need her to – when I leave here today, I need her to sign off.

[MR. PARK'S COUNSEL]: Everybody will cooperate.

[MR. PARKS]: Yes.

[MR. PARK'S COUNSEL]: Okay. So he may ask you to sign some papers to get you off the mortgage. You'll do that and vice versa. Everybody will cooperate in doing that.

THE COURT: So he can get a loan to pay you. He needs you to sign off on the mortgage that he has right now. You don't want the mortgage in your name anyway.

[MRS. PARKS]: Right. I'm just signing off on the mortgage, or not the deed?

THE COURT: No, he will not get the deed until you've been paid all of your money.

[MRS. PARK]: Okay.

[MR. PARKS'S COUNSEL]: The Quitclaim Deed may be part of the closing process to close on his new loan, but it will not be recorded until she is paid. Once she is paid her money then all the Quitclaim Deeds will be recorded.

THE COURT: Do you understand that?

[MRS. PARKS]: Yes.

(Trial Tr. at 26-27.) The trial court's final judgment and decree of divorce is consistent with this discussion and Mr. Parks's attorney's additional representations about the parties' agreement concerning the real property. Mrs. Parks was to receive $20,000 from Mr. Parks as a settlement of the real estate property, and the trial court's judgment provides for that monetary payment.

{¶ 34} We note that paragraph 13 of the final judgment and decree of divorce indicates that the property settlement was "to offset equity in real estate, *and specifically Roger's Lee Hollow property*," plus a prepayment of child support. (Emphasis added.) This reference to Lee Hollow appears to come from Mr. Parks's pretrial statement, in which he proposed to resolve the real estate issue, in part, by "securing a loan for Wife's equity in Lee Hollow for $25,000 to be paid to Wife within 120 days."

{¶ 35} Mr. Parks's pretrial statement further indicated, however, that the Lee

Hollow property was inherited by Mr. Parks and his sister and, thus, was his separate property; Mr. Park did not provide the amount of marital equity in that property. Mrs. Parks's pretrial statement claimed marital equity of approximately $74,000 (half the property's total value). At the October 24 trial, the parties agreed that Mr. Parks would retain the Lee Hollow property, which was "property that husband and his family own." (Trial Tr. at 25.)

{¶ 36} The parties' pretrial statements agreed that the parties had equity of approximately $80,000 in the Rushwood property, which Mr. Parks retained after the divorce. Their pretrial statements disagreed as to the amount of equity in the Brownstone property, which Mrs. Parks retained following the divorce. Mrs. Parks's pretrial statement asserted that the equity in the Brownstone property was approximately $66,000; Mr. Parks asserted that it was higher.

{¶ 37} At trial, the parties told the trial court that Mr. Parks had agreed to pay $20,000 to Mrs. Parks as a property settlement for "all" of the real estate. Based on that statement, the trial court's inclusion of the phrase "and specifically Roger's Lee Hollow property" perhaps did not accurately reflect the parties' intention at trial that the $20,000 resolve the equity issue for all of the properties. Nevertheless, the trial court ordered Mr. Parks to pay $20,000 to Mrs. Parks as a property settlement for the real property, as the parties had agreed on October 24.

{¶ 38} Mrs. Parks's second assignment of error is overruled.

### IV. Conclusion

{¶ 39} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.


Copies sent to:

Cheryl R. Washington
Nicole Rutter-Hirth
Hon. Denise L. Cross