[Cite as *La Spisa v. La Spisa*, 2023-Ohio-3467.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| MELISSA LA SPISA, | : | |
| Plaintiff-Appellee/<br>Cross-Appellant, | : | No. 111810 |
| | : | |
| v. | : | |
| GREGG C. LA SPISA, | : | |
| Defendant-Appellant/<br>Cross-Appellee. | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN
PART, AND REMANDED
**RELEASED AND JOURNALIZED:** September 28, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-17-367482

---

## *Appearances:*

Stafford Law Co., L.P.A., Joseph G. Stafford, and Nicole A.
Cruz, *for appellee.*

Taft Stettinius & Hollister, LLP, Carl A. Murway, and Mary
Kate McClain, *for appellant.*

ANITA LASTER MAYS, A.J.:

{¶ 1}    Defendant-appellant/cross-appellee Gregg C. La Spisa ("Gregg") and plaintiff-appellee/cross-appellant Melissa La Spisa ("Melissa") appeal the decree of divorce issued by the Cuyahoga County Common Pleas Court, Division of Domestic Relations.  We affirm in part, reverse in part, and remand.

I.    **Introduction**

{¶ 2}    Gregg and Melissa met during college in 1993 and married on July 12, 1997. Four children were born of the marriage. Prior to the marriage, Melissa was employed as a technical recruiter and briefly provided recruiting services at the beginning of the marriage prior to the birth of the first child in 2000. The parties agree that Melissa was the full-time caretaker for the children.

{¶ 3}    Gregg has worked in the financial services industry since the beginning of the marriage and, at the time of trial, served as an executive vice president of a financial services firm where he performed business and financial planning.  Gregg's income was seven figures with generous benefits and stock options. Gregg's employer handled various financial accounts for Melissa, her father and brother, and the children.  Gregg managed some of the accounts, controlled the couple's joint accounts, and handled all family finances.  It appears from the record that Gregg still handled the family's accounts that remained with the firm at the time of trial.

{¶ 4}    The parties initially resided at Gregg's home in Chicago and next jointly purchased a home in Oak Brook, Illinois near Melissa's family.  In 2006, the

family relocated for Gregg's career and purchased a home on Lake Avenue in Lakewood, Ohio, and in 2014, purchased a home on Edgewater Drive, in Lakewood, Ohio ("Marital Residence"). The children attended private schools, the family belonged to an established country club, and Gregg, more so than Melissa, enjoyed a lavish lifestyle and active social life.

{¶ 5} Melissa testified that Gregg was unfaithful during the marriage and in 2016 to 2017, became involved with coworker Alexandra Nakkache ("Nakkache"). Gregg moved out of the home in 2017, and subsequently began residing with Nakkache.

{¶ 6} Melissa filed a complaint for divorce on June 13, 2017. Gregg answered and counterclaimed on July 12, 2017. The trial court issued a temporary support order on December 12, 2017. Mediation was unsuccessful. The Marital Residence was placed on the market and ultimately sold. Melissa and the children relocated.

{¶ 7} In 2021, Gregg and Nakkache held a formal wedding ceremony, reception, and honeymoon prior to the final divorce decree. Gregg claimed the nuptials were faux and were held because Nakkache's father was terminally ill.

{¶ 8} Trial of this contentious divorce ultimately began on May 10, 2021, and, due to a series of continuances, the 17-day trial concluded on March 11, 2022.[1] The children were emancipated by the first day of trial.

---

[1] According to the judgment entry of divorce, trial was held on "May 10th-14th, May 17th-18th, June 7th and 8th, 2021 and January 26th-28th, March 7th-11th, 2022." Journal entry No. 126093759, pg. 1 (July 11, 2022).

**{¶ 9}** Gregg appeals. Melissa cross-appeals.

## II.    Assignments of Error

### A.    Gregg's direct appeal

**{¶ 10}** Gregg advances eight assignments of error for this court's consideration:

I.    The trial court erred in failing to find a *de facto* termination date of the marriage.

II.   The trial court erred in its classification of property.

III.  The trial court erred by failing to equitably divide marital assets pursuant to R.C. 3105.171.

IV.   The trial court erred by failing to consider tax consequences when dividing stock awards that were taxed as wages as part of Gregg's compensation and by considering such awards as both assets and income.

V.    The trial court erred in awarding Melissa a distributive award for marital funds expended on Gregg's faux wedding ceremony and "honeymoon."

VI.   The trial court erred in ordering Gregg to "reimburse" Melissa for the hypothetical income tax liabilities she incurred for the years 2018 through 2021.

VII.  The trial court erred in failing to properly consider all relevant factors in determining the appropriate duration of its spousal support award.

VIII. The trial court erred in awarding spousal support to Melissa in the amount of $25,000 per month.

### B.    Melissa's Cross-Appeal

**{¶ 11}** Melissa proffers four cross- assignments of error:

I.    The trial court erred as a matter of law and abused its discretion in failing to retroactively modify the appellant/cross-appellee's temporary support obligations.

II.    The trial court erred as a matter of law and abused its discretion in failing to grant an indefinite award of spousal support.

III.   The trial court erred as a matter of law and abused its discretion by prohibiting the appellee/cross-appellant from completing cross-examination of Alexandra Nakkache.

IV.    The trial court erred as a matter of law and abused its discretion in failing to award appellee/cross-appellant an award of attorney fees.

## III.   General Standard of Review

{¶ 12}   The Ohio Supreme Court has long recognized that a trial court must have discretion to do what is equitable upon the facts and circumstances of each divorce case. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). When reviewing a trial court's determination in a domestic relations case, an appellate court generally applies an abuse of discretion standard. *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 130, 541 N.E.2d 597 (1989).

{¶ 13}   "A court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 19. *See also Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 39 ("[C]ourts lack the discretion to make errors of law, particularly when the trial court's decision goes against the plain language of a statute or rule.").

## IV.   Gregg's Direct Appeal

### A.   De Facto Termination Date

{¶ 14}   Gregg first assigns as error the trial court's failure to find a de facto marriage termination date of June 13, 2017, the date Melissa filed for divorce.  We find no merit to Gregg's argument.

{¶ 15}   As Gregg asserts, defining the duration of the marriage is a prerequisite to formulating the equitable division of marital and separate property under R.C. 3105.171(A)(2)(a)-(b).  The duration of the marriage is one of ten factors the trial court must consider in determining what is equitable under R.C. 3105.171(F)(1).  A trial court's discretion to determine the appropriate marriage termination date is broad and is a decision that should not be disturbed on appeal absent an abuse of discretion.  *Kobal v. Kobal*, 2018-Ohio-1755, 111 N.E.3d 804, ¶ 20 (8th Dist.), citing *Berish v. Berish*, 69 Ohio St.2d 318, 321, 432 N.E.2d 183 (1982).

{¶ 16}   There is a presumption that the final hearing date serves as the date of termination.  *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 31.  R.C. 3105.171(A)(2)(a).  Under R.C. 3105.171(A)(2)(b), a de facto beginning date, termination date, or both may be selected where the court finds it equitable.  R.C. 3105.171(A)(2)(b).

{¶ 17}   "'In general, trial courts use a de facto termination of marriage date when the parties separate, make no attempt at reconciliation, and continually maintain separate residences, separate business activities, and separate bank accounts.'"  *Id*. at ¶ 32, quoting *O'Brien v. O'Brien*, 8th Dist. Cuyahoga No. 89615,

2008-Ohio-1098, ¶ 41. However, "'courts should be reluctant to use a de facto termination of marriage date solely because one spouse vacates the marital home.'" *Id*., quoting *id*. "'[A] trial court may use a de facto termination of marriage date when the evidence clearly and bilaterally shows that it is appropriate based upon the totality of the circumstances.'" *Id*., quoting *id*.

{¶ 18} Gregg argues the trial court abused its discretion and assets acquired after that date should not be considered marital property. Gregg states he permanently left the residence in February 2017, the parties lived separately after that time, the Marital Residence was sold, the parties had separate bank accounts, and Melissa's June 2017 motion for a temporary restraining order stated the parties had maintained separate residences since March 2017.[2] Gregg attributes the multiple delays in moving forward to counsel for Melissa.

{¶ 19} Melissa counters that requests by Gregg to advance the trial date while being unwilling to do so are examples of the gamesmanship that the trial court cited in its decree. Melissa testified there was no bilateral agreement to terminate the marriage and that Gregg moved in and out of the house several times. Melissa claims that she obtained a restraining order to stop Gregg from entering the house without Melissa's permission. Melissa emphasized that though she was not employed and the children were not yet emancipated, Gregg failed to timely pay

---

[2] Gregg also testified that that he separated from Melissa in 2016 and that he "went back and forth." (Tr. 186-187.) (For ease of reference, PDF denotes the page of the electronic transcript that contains multiple volumes.)

temporary support for Melissa and the children while Gregg and Nakkache lived extravagantly.[3]

{¶ 20} The trial court did not accept Gregg's de facto termination request, nor did it select the presumptive last day of the final hearing under R.C. 3105.171(2)(a). Instead, the trial court selected the first day of trial as a de facto termination date as indicated by the following finding:

> The Court finds this matter was filed on June 13, 2017. The matter was set for numerous settlement conferences as well as trial dates. Trial began on May 10, 2021, and was completed on March 11, 2022. Due to the gamesmanship from both sides regarding the length of time it took said matter to complete, the Court finds the duration of the marriage shall be from July 12, 1997, until May 10, 2021, the first day that trial commenced.

Journal entry No. 126093759, p. 1 (July 11, 2022).

{¶ 21} In *Keating v. Keating*, 8th Dist. Cuyahoga No. 90611, 2008-Ohio-5345, the husband had complete control of the family resources after the separation of the parties. This court held that it is wholly within the trial court's discretion to select a more equitable date for termination based on the unique facts and circumstances of the case "where one spouse remained financially dependent upon the other through the separation." *Id.* at ¶ 23, citing *Abernethy v. Abernethy*, 8th Dist. Cuyahoga No. 80406, 2002-Ohio-4193; R.C. 3105.171(A)(2)(b).

---

[3] Melissa asserted the parties' filed taxes jointly for 2017 but in 2018, Gregg began filing separately purportedly without advising Melissa, which Melissa said was designed to support Gregg's position on the de facto termination date and to disadvantage Melissa financially.

{¶ 22} Melissa was financially dependent on Gregg, and the case had been pending for several years. The divorce decree cites the gamesmanship by the parties and behavioral issues when it rendered its decision regarding attorney fees. "The Court finds, based on the evidence and testimony from both parties, that neither negotiated in good faith attempts to settle this matter." Journal entry No. 126093759, p. 10 (July 11, 2022). "Both parties conducted themselves in such a way to harass and intimidate the other to kowtow to their wishes. The Court finds through this matter, neither party was credible with their testimony." *Id.*

{¶ 23} "When there are two versions of events, neither of which is unbelievable, we defer to the factfinder, who was best able to weigh the evidence and judge the credibility of the witnesses." *Herrera v. Phil Wha Chung*, 8th Dist. Cuyahoga No. 109793, 2021-Ohio-1728, ¶ 33, citing *Ballinger v. Ballinger*, 8th Dist. Cuyahoga Nos. 100958, 101074, 101655, and 101812, 2015-Ohio-590, ¶ 28, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St. 3d 77, 80, 461 N.E.2d 1273 (1994), and *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶ 24} We do not find that based on the totality of the circumstances the trial court abused its discretion in selecting an equitable termination date as it is legally empowered to do. *See Strauss,* 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 32*,* quoting *O'Brien*, 8th Dist. Cuyahoga No. 89615, 2008-Ohio-1098, at ¶ 41.

{¶ 25} The first assignment of error is overruled.

## B.    Classification of Property

{¶ 26} Gregg assigns as his second error the trial court's incorrect classification of marital and separate property. When distributing property in a divorce proceeding, the trial court must first determine what constitutes marital property and what constitutes separate property. *Comella v. Comella*, 8th Dist. Cuyahoga No. 90969, 2008-Ohio-6673, ¶ 38, citing R.C. 3105.171(B). The characterization of the property as marital or separate is a mixed question of law and fact that will not be reversed unless it is against the manifest weight of the evidence. *Kobal*, 2018-Ohio-1755, 111 N.E.3d 804, at ¶ 27 (8th Dist.), citing *Saks v. Riga*, 8th Dist. Cuyahoga No. 101091, 2014-Ohio-4930, ¶ 35.

{¶ 27} "When conducting a manifest weight review, this court 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Lichtenstein v. Lichtenstein*, 8th Dist. Cuyahoga No. 108854, 2020-Ohio-5080, ¶ 24, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 28} While the characterization of the property must be supported by the manifest weight of the evidence, a reviewing court will not disturb a trial court's distribution of the property absent an abuse of discretion. *Kobal* at ¶ 27, citing *Saks* at ¶ 35.

{¶ 29} "Property that is acquired during the marriage is presumed to be marital property unless it can be shown to be separate." *Ockunzzi v. Ockunzzi*, 8th Dist. Cuyahoga No. 86785, 2006-Ohio-5741, ¶ 17. Marital property does not include separate property. R.C. 3105.171(A)(3)(b). "Separate property" is not marital property and includes any real and personal property or any interest in real or personal property that was acquired by a spouse prior to the date of the marriage. R.C. 3105.171(A)(6)(a)(ii).

{¶ 30} "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). "The party seeking to establish an asset as his or her own separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to the separate property source." *Walpole v. Walpole*, 8th Dist. Cuyahoga No. 99231, 2013-Ohio-3529, ¶ 110, citing *Kehoe v. Kehoe*, 2012-Ohio-3357, 974 N.E.2d 1229, ¶ 11 (8th Dist.).

{¶ 31} R.C. 3105.171(C)(1) mandates the equal division of marital property, or "if an equal division is inequitable, the court must divide the marital property equitably." *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, ¶ 5. To determine what is equitable, the trial court must consider the factors outlined in R.C. 3105.171(F). *Id.* These factors include the duration of the marriage, the assets and liabilities of the spouses, tax consequences of the property division, any retirement benefits of the spouses, and "[a]ny other factor the court

expressly finds to be relevant and equitable." R.C. 3105.171(F)(1)-(10); *Kehoe*, 2012-Ohio-3357, 974 N.E.2d 1229, at ¶ 14 (8th Dist.).

{¶ 32} A trial court is not required to enumerate each factor but must address the relevant factors in sufficient detail to enable an appellate court to determine whether the award is fair, equitable, and pursuant to law. *Walpole* at ¶ 20, *Kaletta v. Kaletta*, 8th Dist. Cuyahoga No. 98821, 2013 Ohio 1667, ¶ 22, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 96, 518 N.E.2d 1197 (1988), *superseded by statute on other grounds*.

{¶ 33} This court reviews a trial court's property division "as a whole, in determining whether it has achieved an equitable and fair division of marital assets." *Tyler v. Tyler*, 8th Dist. Cuyahoga No. 93124, 2010-Ohio-1428, ¶ 24, citing *Briganti v. Briganti*, 9 Ohio St.3d 220, 459 N.E.2d 896 (1984).

### 1. Marital Residence Sales Proceeds

{¶ 34} Gregg argues that the trial court's award of the proceeds from the sale of the Marital Residence held in Melissa's counsel's IOLTA account was in error. The sale of the Marital Residence took place in 2019 while the case was pending. The net proceeds were deposited in the IOLTA account of Melissa's counsel.

{¶ 35} The trial court held:

From the proceeds, [Melissa's] father was repaid $175,000.00, $5,000.00 was used to retain an expert, Apple Growth partners, and $30,000.00 was used for the purchase of a vehicle for one of the parties' children. There is approximately $142,460.61 remaining in the IOLTA.

[Melissa] claims to have a separate property interest based on money she received from her father in lieu of her brother attending medical school. The parties used the $175,000.00 to purchase a home in 2000 and said funds were subsequently rolled over into the Edgewater Drive property. Based on the evidence and testimony, the Court finds the marital homes purchased and sold during the entirety of the marriage were all funded from [Melissa's] separate property. The Court finds the remaining monies in the IOLTA account are Plaintiff's separate property, stemming from a gift made to her by her father.

Journal entry No. 126093759, p. 2 (July 11, 2022). The trial court decreed that the IOLTA funds "in the amount of $142,460.61, or whatever amount is currently left in the IOLTA, should it be a lesser amount, shall be awarded to [Melissa] as her separate property." *Id.* at p. 2.

{¶ 36} Gregg does not dispute the disbursements but argues: (1) the IOLTA balance was $121,590.66 and not the trial court's stated amount, (2) the trial court confused the $175,000 loan with Melissa's $150,000 from her father, and (3) Melissa was not entitled to the award as her separate property.

{¶ 37} Gregg testified that he purchased the first house the couple occupied, located in Lombard, Illinois, prior to their 1997 marriage. The second home, located in Oak Brook, Illinois, was purchased with funds from the sale of the Lombard house with money belonging to each party. Gregg could not recall the year of purchase or the purchase price. (Tr. 84-85.) The parties moved to Ohio in 2006 and purchased a home on Lake Road in Lakewood. In 2014, the parties purchased the Marital Residence on Edgewater Drive in Lakewood.

{¶ 38} Gregg confirmed during cross-examination that Melissa's father gave her $175,000 that the father referred to as a medical school equalizer because

he had given an equivalent amount to Melissa's brother for medical school. Gregg said the funds were expended in 2000.

{¶ 39} Gregg was subsequently questioned about a ledger prepared by Melissa's father (ex. No. 166) that contained a list of funds the father provided. The ledger included an entry labeled "medical school equalizer" for $150,000. Melissa's counsel inquired:

Counsel: Where is [the medical school] money now?

Gregg: It was in the house.

Counsel: In the house. Which house?

Gregg: It was in the house in Oak Brook.

Counsel: That one got sold, and the proceeds rolled over, right?

Gregg: To the house in Lakewood.

Counsel: So you would agree that the funds all got rolled over from one home to the other, right?

Gregg: Correct.

Counsel: And now it sits in my escrow account?

Gregg: That is correct.

(Tr. 670.)

{¶ 40} Despite Gregg's testimony, Gregg argues that Melissa has not demonstrated by a preponderance of the evidence that the $150,000 rolled to the Marital Residence and to the IOLTA account. *See Walpole*, 8th Dist. Cuyahoga No. 99231, 2013-Ohio-3529, at ¶ 110, citing *Kehoe*, 2012-Ohio-3357, 974 N.E.2d 1229, at ¶ 11 (8th Dist.). "'Preponderance of the evidence simply means 'evidence

which is of greater weight or more convincing than the evidence which is offered in opposition to it.'" *Holliday v. Calanni Ents.*, 2021-Ohio-2266, 175 N.E.3d 663, ¶ 21 (8th Dist.), quoting *In re Starks*, 2d Dist. Darke No. 1646, 2005-Ohio-1912, ¶ 15, quoting *Black's Law Dictionary* 1182 (6th Ed.1998).

{¶ 41} Though Gregg initially testified that the amount was $175,000, both parties testified that the $150,000 medical money fund rolled through the property transfers to the IOLTA account. Gregg now asserts that the Lakewood residences sold for less than the purchase price to the medical money proceeds did not roll through the residential purchases after all.

{¶ 42} This court finds that the classification of the funds as separate is not against the manifest weight of the evidence and the trial court's distribution of the funds to Melissa is not an abuse of discretion because entitlement to the proceeds has been established by a preponderance of the evidence.

{¶ 43} As to the claim that the IOLTA account balance should have been listed as $121,590.66, we find no error. The trial court awarded Melissa "the amount of $142,460.61, or whatever amount is currently left in the IOLTA, should it be a lesser amount, shall be awarded to [Melissa] as her separate property." The record reflects the stated balance of the IOLTA is comprised of the Marital Residence proceeds less the $175,000 repayment to Melissa's father, $5,000 for a legal expert, and $30,000 for a car for the children.

{¶ 44} Gregg does not dispute the deductions but adds that, in addition to the initial check for $331,590.66, a second check from the sale of the Marital

Residence in the amount of $20,869.95 was deposited into the IOLTA account that was not disclosed to Gregg. As a result, Gregg claims that Melissa should be sanctioned. Melissa advises that Gregg's counsel represented Gregg in the residential transaction and was aware of the deposits. Apparently, the trial court was also aware as the proceeds of the two checks less the listed expenditures equal the awarded sum of $142,460.61.

{¶ 45} We find that the trial court's finding that the medical fund figure of $175,000 is incorrect and the correct figure is $150,000 as supported by the record.

### 2. Flood insurance

{¶ 46} Gregg challenges the trial court's findings regarding the 2014 and 2020 flood insurance proceeds. The trial court held:

> Both parties testified regarding insurance proceeds from a [2014] flood at the Edgewater Drive property [Marital Residence] and a [2020] flood in Plaintiff's current residence in Avon.
>
> Defendant testified he received insurance proceeds in the amount of $49,324.00, which were placed in the parties' joint account and said monies have been spent down. Plaintiff testified she never replaced her personal property that was destroyed including items given to her by her parents.
>
> The Court finds the insurance proceeds from the Edgewater Drive property [Marital Residence] are marital funds and shall be divided equally among the parties. The Court further finds the proceeds from the flood occurring at Plaintiff's residence are deemed to be her separate property.
>
> It is further ordered, adjudged, and decreed [that] Defendant shall reimburse Plaintiff in the amount of $24,662.00 as her marital portion of the insurance proceeds [received by Gregg].

Journal entry No. 126093759, p. 2-3 (July 11, 2022).

{¶ 47} The evidence establishes that a 2014 insurance claim was made for personal property damage due to a flood at the Marital Residence. A 2020 insurance claim was made for personal property damage for a flood that occurred at Melissa's current residence.

{¶ 48} Gregg argues that the insurance proceeds for the 2014 flood were received in 2014, deposited into the parties' joint account and used for marital household expenses. He also states that the amount received for the 2014 flood was $30,000 to $40,000 and the $49,324 figure is for the 2020 flood at Melissa's residence. Gregg further contends the trial court provided no explanation for its decision, and cited no evidence that Gregg concealed or fraudulently disposed of the proceeds pursuant to R.C. 3105.171(E)(4) that would support the distributive award of proceeds to Melissa.[4]

{¶ 49} Melissa responds that the foundation for the trial court's findings is Gregg's testimony. During cross-examination regarding the proceeds from the sale of the Marital Residence, Gregg was asked about the insurance payments for the 2014 flood claim. Gregg testified that the proceeds were approximately $35,000 to $40,00 and were deposited in the joint account. Gregg agreed that none of the funds were put into a separate account to compensate Melissa for damage to her separate personal property. (Tr. 675, 681.)

---

[4] R.C. 3105.171(E)(4) empowers the trial court to make a distributive award designed to compensate an offended spouse for financial misconduct.

{¶ 50} Counsel presented a packet of automobile and property insurance claims by the parties' insurer. Gregg remarked that there were "a lot of pages" and accepted counsel's offer to find the pertinent pages for him. Gregg confirmed that the pages contained photographs and a list of damaged items. The inquiry continued:

Counsel: And then if you look at this, they say what they're going to pay, right?

Gregg: Correct.

Counsel: And you go those checks, right?

Gregg: Right.

Counsel: And let me find the dollar amount, total damage lost was $76,000 — I'm sorry, the line items was 71,000. It's on page 14 of the itemization listing.

Gregg: That is correct.

Counsel: $76 — or, I'm sorry, $71,314, correct? Replacement value, $76,000, less depreciation, actual cash value — they take out some deductions, and they write a check — or they issue you a check in the amount of $49,324 on just this claim, right?

Gregg: That's correct.

Counsel: And that money is all gone?

Gregg: That would be correct.

(Tr. 684-685.) Melissa states the testimony establishes that she was not compensated from the claim proceeds for her personal property damaged by the 2014 flood.

{¶ 51} Melissa was also cross-examined about the insurance exhibit. Counsel stated that the claim detail previously presented to Gregg listed the date of

loss as August 28, 2020, and asked, "And that would have been the date of the flood [at Melissa's residence], is that right? Melissa responded, "Sure. Yep." (Tr. 1169.) Counsel also elicited testimony that the almost $50,000 in proceeds was received by Melissa and deposited into her bank account, information that Gregg states had not been previously disclosed by Melissa though Melissa testified she told Gregg she received the money and used it to replace her personal belongings. Gregg denies Melissa's claim and, to that end, declares that Melissa should have been sanctioned for financial misconduct.

{¶ 52} This court determines that the trial court's findings regarding the 2014 and 2020 flood proceeds and resultant property allocation are against the manifest weight of the evidence and constitute an abuse of discretion.

{¶ 53} The second assignment of error is overruled in part and sustained in part. The trial court's award of the remaining funds in the IOLTA account to Melissa is affirmed. The case is remanded for the limited purpose of correcting the decree to reflect that the medical fund amount was $150,000. The trial court's award for the 2014 and 2020 flood proceeds is reversed and remanded pursuant to this opinion.

## C. Equitable Asset Division

{¶ 54} Gregg charges via the third assignment of error that the trial court failed to divide the marital assets equitably pursuant to R.C. 3105.171. R.C. 3105.171(C)(1) mandates an equal division of marital property, or "if an equal division is inequitable, the court must divide the marital property equitably."

*Neville*, 99 Ohio St. 3d 275, 2003-Ohio-3624, 791 N.E.2d 434, at ¶ 5. The trial court must consider the factors outlined in R.C. 3105.171(F). *Id.* These factors include the duration of the marriage, the assets and liabilities of the spouses, tax consequences of the property division, any retirement benefits of the spouses, and "[a]ny other factor the court expressly finds to be relevant and equitable." R.C. 3105.171(F)(1)-(10); *Kehoe*, 2012-Ohio-3357, 974 N.E.2d 1229, at ¶ 14 (8th Dist.).

{¶ 55} The trial court "'must indicate the basis for its division of the marital property in sufficient detail to enable a reviewing court to determine whether the award is fair, equitable, and in accordance with the law.'" *Johnson v. Mills*, 8th Dist. Cuyahoga No. 102241, 2015-Ohio-4273, ¶ 19, quoting *Franklin v. Franklin*, 10th Dist. Franklin No. 11AP-713, 2012-Ohio-1814, ¶ 4.

{¶ 56} Gregg makes a blanket claim that the trial court failed to make findings that it considered the factors in R.C. 3105.171(F). That failure Gregg asserts impacts this court's ability to determine whether the division is equitable. Gregg adds that the failure reveals the trial court's disdain for Gregg. As a solution, Gregg suggests that this court remand the case to the trial court to make specific findings of fact and conclusions of law.

{¶ 57} This court finds that the blanket allegation of statutory noncompliance does not comport with the Rules of Appellate Procedure. Under App.R. 12(A)(2) and 16(A)(7), an appellate court may disregard arguments where the appellant fails to identify the issues and the relevant portions of the record to support the argument. It is not this court's role to scour the record to root out issues

and arguments. *See Baxter v. Thomas*, 8th Dist. Cuyahoga No. 101186, 2015-Ohio-2148, *Rodriguez v. Rodriguez*, 8th Dist. Cuyahoga No. 91412, 2009-Ohio-3456.

{¶ 58} To the extent the arguments are properly set forth for this court's consideration in the appellate briefs, they will be addressed.

{¶ 59} The third assignment of error is overruled.

**D.    Stock awards**

{¶ 60} In the fourth assigned error, Gregg challenges the accuracy of the trial court's order that Gregg pay to Melissa $304,374 related to Gregg's employment stock awards.

{¶ 61} The trial court held:

The Court finds that during the pendency of this matter, Defendant earned stock shares due to his employment, including One Thousand Eight Hundred and Nine (1,809) stock units on June 6, 2017; Seven Thousand Thirty-Five (7,035) stock units on May 17, 2018; Seven Thousand Four Hundred and Seventy-One (7,471) stock units on February 14, 2019; Three Thousand Two Hundred Thirty-Six (3,236) stock units on February 26, 2020 and One Thousand Seven Hundred Ninety-Five (1,795) stock units on February 17, 2021. The Court finds Defendant received $127,142.00 for his vested stock in February of 2022; $123,057.00 for his vested stock in 2021; $182,889.00 for his vested stock in 2020; $89,547.00 for his vested stock in 2019 and $86,113.00 in vested stock for 2018. The total amount received was $608,748.00. The Court finds the stock to be marital property as all options were received before the termination date of the marriage. The Court finds the monies received by Defendant shall be divided equally among the parties.

It is further ordered, adjudged, and decreed [that] Defendant shall pay the sum of $304,374.00 to Plaintiff for the equal division of the vested stock options within thirty (30) days from the journalization of this order.

Journal entry No. 126093759, p. 3-4 (July 11, 2022). The trial court treated the vested stock as marital property. Gregg retained his restricted stock units free of any claims by Melissa.

**{¶ 62}** Gregg participated in various stock programs with his employer. Gregg testified that in 2018, there was a change in his employer's corporate structure that included a shift in compensation programs. Incentive stock options from the former company had a grant price and upon sale, a strike price. Gregg received the difference between the grant and strike price, minus taxes, that was not regular income but subject to capital gains taxes.

**{¶ 63}** Beginning in 2018, annual performance shares were awarded and paid as part of regular income over the subsequent three years at one-third of the value per year. "Counsel: So for the year of 2018 — or the year of 2017, you're paid in 2018, 2019, and 2020?" "Gregg: Yes." (Tr. 594.)

**{¶ 64}** Gregg also testified during cross-examination regarding the dates and amounts listed in a portion of the trial court's decree based on information contained in an exhibit produced by Gregg:

Counsel: There on February 14, 2019, the stock grants were granted — on the first one, 7,471.

Those were paid out on February 14, 2020, February 14, 2022, and February 14, 2022, correct?

Gregg: The first two, yes. The 2022 [payment] takes about 30 days after it vests to pay out.

Counsel: But you're soon to have [$]77,000 gross, correct?

Gregg: In the next — yes, that is correct.

Counsel:   * * * And the stock grants from * * * February 26, 2020, 3,236 grants or stocks were awarded you.

And then there was a payout on February 26, 2021 of an amount, correct?

Gregg:   Correct.

Counsel:   Then on February 26, 2022, there is 32,541 in dollars that is set to payout to you, correct?

Gregg:   Correct.

Counsel:   So far we are up to $109,000 gross just on the two stock options so far, correct?

Gregg:   That is correct.

Counsel:   And then on February 17, 2021, it indicates that you're due to receive on February 28, 2022, $17,483, correct?

Gregg:   That is correct.

Counsel:   So another $126,000 is soon-to-be-paid out to you in the next 30 days, correct?  That is correct.

That's in addition to the amounts we talked about yesterday.

Gregg:   That's correct.

(Tr. 594-595.)

{¶ 65}  Based on a review of the evidence, the trial court's findings are not against the manifest weight of the evidence nor did the trial court abuse its distribution discretion.

{¶ 66}  Gregg next argues that the cited stock payments were included on Gregg's IRS Form W-2 as regular wages and the payments were used to pay personal expenses as well as expenses required by the temporary support order.  Thus, it is Gregg's position that the trial court counted the assets both as assets and income.

{¶ 67} Double dipping, also referred to as double counting, refers to counting a marital asset in both the division of property and in the award of spousal support under R.C. 3105.18(C)(1). *Dean v. Dean*, 8th Dist. Cuyahoga No. 95615, 2011-Ohio-2401, ¶ 31, citing *Heller v. Heller*, 10th Dist. Franklin App. No. 07AP-871, 2008-Ohio-3296, ¶ 19, and *Chattree v. Chattree*, 2014-Ohio-489, 8 N.E.3d 390, ¶ 75 (8th Dist.) (division of marital pension as a property distribution that is also included as income for spousal support obligations allows the recipient to receive a portion of the pension in two different forms).

{¶ 68} Melissa responds that the exhibits relied on by Gregg were never authenticated under Evid.R. 901 but does not assign the issue as error. She denies that double dipping applies, adding that "[i]t is the future income stream, not the marital asset, that is the subject of the doubling in the double dip." *Gallo v. Gallo*, 10th Dist. Franklin No. 14AP-179, 2015-Ohio-982, ¶ 18.

{¶ 69} This case does not involve the division of marital property or transfer of income-generating property that is subsequently counted again as income for support purposes. The trial court divided the proceeds that Gregg received for stock that vested during the marriage. The "goal of spousal support is to reach an equitable result." *Kehoe*, 8th Dist. Cuyahoga No. 99404, 2013-Ohio-4907, at ¶ 13.

{¶ 70} The fourth assignment of error is overruled.

### E. Distributive Award For Faux Nuptials

**{¶ 71}** In the fifth assignment of error, Gregg contests the trial court's distributive award to Melissa for one-half of the sum that Gregg spent for the "commitment ceremony" with Nakkache prior to the divorce.

**{¶ 72}** R.C. 3105.171(E)(4) provides that "the court may compensate the offended spouse with a distributive award or with a greater award of marital property" "if a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets." *Id*. "'The distributive award concept is consistent with the well-established principle that trial courts have broad discretion when creating an equitable division of property in a divorce proceeding.'" *Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, at ¶ 39, quoting *Adams v. Chambers*, 82 Ohio App.3d 462, 466, 612 N.E.2d 746 (12th Dist. 1992), citing *Teeter v. Teeter*, 18 Ohio St.3d 76, 479 N.E.2d 890 (1985).

**{¶ 73}** The trial court held:

> In April 2021 Defendant participated in [a] ceremony with Ms. Nakkache and following the ceremony Defendant and Ms. Nakkache went to Hawaii for a "honeymoon." The evidence and testimony demonstrated Defendant used marital funds to pay for the following: an engagement ring, valued at $13,300.00; wedding band and a Chanel bag, valued at $4,798.00; a rehearsal dinner, valued at $1,752.00; alcohol for the dinner, valued at $667.00; a rental house for the Defendant and his children, valued at $2,040.00; flights to Hawaii for a "honeymoon" valued at $3,319.68; travel voucher for flights, valued at $1,1511.96 [sic]; Ritz-Carlton room, food and beverage, valued at $9,659.00 and Marriott room, food and beverage, valued at $4,250.00 for a total of $42,724.64.

Journal entry No. 126093759, p. 5 (July 11, 2022).

{¶ 74} The court found that "[d]efendant improperly used marital funds and in such [sic], Plaintiff is entitled to a distributive award of one-half of the marital funds expended, in the amount of $21,362.32." *Id.* "It is further ordered, adjudged, and decreed Defendant shall reimburse Plaintiff in the amount of $21,362.32 for marital funds expended on the aforementioned ceremony and honeymoon." *Id.*

{¶ 75} Gregg argues that spending the funds for himself several years after the parties separated is not financial misconduct. Our finding under the first assignment of error negates Gregg's argument that the festivities took place after the termination date of the marriage. Gregg adds that the spouse must engage in "wrongdoing" or must profit from the misconduct or acts with the intent to defeat the interest of the other spouse in the assets. *Cross v. Cross*, 8th Dist. Cuyahoga No. 102627, 2015-Ohio-5255, 54 N.E.3d 756, ¶ 16. Gregg also declares that the statute not only requires wrongdoing but wrongful intent. *Choi v. Choi*, 2018-Ohio-725, 106 N.E.3d 908, ¶ 23 (9th Dist.).

{¶ 76} The record supports that Gregg spent approximately $50,000 for the events while still legally married to Melissa. Information was posted on social media. Melissa testified about the negative impact the events had on her and on the children who were required to attend by Gregg. Gregg testified that the ceremony was not a legal wedding but was held because Nakkache's father was terminally ill and he denied that the children had a problem with attending the events.

{¶ 77} Melissa also testified that while Gregg expended substantial funds on Nakkache, his payment of Melissa's rent and medical expenses for the children

pursuant to the temporary support order were unpaid. Melissa cites in support of her argument *Hall v. Hall*, 2d Dist. Greene No. 2013 CA 15, 2013-Ohio-3758, ¶ 24 (husband misused marital assets to provide housing for himself and girlfriend while allowing marital residence to go into foreclosure constituted intentional financial misconduct) and *Hoffman v. Hoffman*, 10th Dist. Franklin No. 94APF01-48, 1994 Ohio App. LEXIS 3536 (affirming trial court's distributive award to wife where husband diverted marital resources to paramour and paramour's business).

{¶ 78} "A trial court has broad discretion in a divorce proceeding to fashion an award that compensates a spouse for the financial misconduct of the other spouse." *Buskirk v. Buskirk*, 8th Dist. Cuyahoga No. 111399, 2023-Ohio-70, ¶ 37, citing *Trolli v. Trolli,* 8th Dist. Cuyahoga No. 101980, 2015-Ohio-4487, at ¶ 51.

{¶ 79} Based on the record before us and the unique circumstances of this case, this court does not find that the trial court abused its broad discretion by making a distributive award under these facts.

{¶ 80} The fifth assigned error is overruled.

### F. Income Tax Liabilities

{¶ 81} In the sixth error assigned Gregg challenges the trial court's findings regarding income tax liabilities.

{¶ 82} The trial court decreed:

The Plaintiff presented evidence and testimony regarding her estimated tax debts for the years of 2018, 2019, 2020 and 2021. The temporary support order was entered on or before December 31, 2018 which created taxable income to Plaintiff and a tax deduction to Defendant. The Court finds that Defendant prepared Federal Tax Returns for the years of 2018, 2019 and 2020. Defendant testified he

informed Plaintiff he would be filing separately in 2018. Plaintiff offered no rebuttal testimony regarding whether or not she was informed of his filing separately. The Court finds that neither party did their due diligence to clarify how the taxes would be dealt with, however, in light of the fact that Defendant has availed himself of the spousal support deduction, the Court finds he shall pay one-half of the estimated taxes due and owing in the amount of $103,080.00.

Journal entry No. 126093759, p. 5 (July 11, 2022). The trial court ordered that Gregg reimburse Melissa $51,540.00.

{¶ 83} Gregg agrees that the trial court's statement that the temporary support order was entered prior to December 31, 2018, supports the position that he was entitled to a spousal support deduction and Melissa was required to report the support as income.[5] Thus, Gregg contests the trial court's holding that Gregg reimburse Melissa the sum of $51,540.00 for her tax debt. Gregg contends: (1) the trial court's finding is contrary to tax law; (2) trial evidence supports that Gregg informed Melissa of his intention to file separately beginning in 2018; (3) Melissa failed to call the accountant who prepared Melissa's draft tax returns including penalty and interest calculations as a witness; and (4) the debt is not marital debt and constitutes financial misconduct under R.C. 3105.171(E)(4). We need not address the argument that the debt was not incurred during the marriage because the assignment of error on that issue has been overruled.

---

[5] The United States Internal Revenue Code was amended in 2017 by the enactment of the Tax Cuts and Jobs Act. P.L. 115-97 Sec. 11051, 131 Stat. 2054, repealed provisions of the Internal Revenue Code "allowing a payor of 'alimony' to deduct that payment from his or her income." *Rigby v. Rigby*, 12th Dist. Brown No. CA2020-07-005, 2021-Ohio-271, ¶ 36, 26 U.S.C. 71. After December 2018, "[t]he spousal support payment is no longer deductible from the payor's gross income for tax liability purposes and the payment is not includable as income for the spousal support recipient. *Id. at 36,* fn. 3.

{¶ 84} Gregg relies on this court's holding in *Gupta v. Gupta*, 8th Dist. Cuyahoga No. 99005, 2013-Ohio-2203, for the debt is not a marital debt because it was not incurred for a valid marital purpose. *Id.* at ¶ 49. In *Gupta,* we held that the husband's refusal to timely file income tax returns for four years constituted financial misconduct under R.C. 3105.171(E)(4). Gupta's employer brought the issue to Gupta's attention and referred him to a major accounting firm to have the taxes prepared free of charge. The husband did not accept the offer. *Id.* at ¶ 53. Faced with a tax bill of almost $2 million, husband unsuccessfully attempted to discharge the debt through bankruptcy. This court held that the husband's refusal to file the taxes though he was offered assistance constituted dissipation of marital assets. This court also decided that the bankruptcy expenses were not incurred for a valid marital purpose and affirmed allocation of the full amount of the debt to the husband. We do not find that *Gupta* is determinative here.

{¶ 85} Gregg testified that the parties filed jointly through 2017 and that Gregg's accountant handled the income taxes. Gregg initially testified that he was not familiar with the tax laws and could not confirm that he received a tax benefit from filing separately, but later admitted the spousal support deduction may have been advantageous. Gregg did not advise Melissa that he was filing separately by phone, email, or text but claimed he informed her in person.

{¶ 86} Melissa denied that Gregg informed her about the separate filing, stated that Gregg had always handled the finances and taxes and that she did not know that spousal support was taxable. (Tr. 1215.) During Melissa's cross-

examination of Gregg, counsel introduced tax exhibits prepared by Apple Growth Partners, a client of Gregg's, who was hired by Melissa through counsel to prepare the tax information. The documents demonstrated that Melissa's tax liabilities for 2018, 2019, and 2020 totaled $103,080 as a result of Gregg's unilateral decision to file separately.

{¶ 87} The record supports that Gregg handled the financial matters for the parties including tax issues and Melissa was not involved. The trial court determined that neither party took the initiative to clarify how the tax returns would be handled during the separation, but Gregg availed himself of the spousal support deduction.

{¶ 88} The debt was incurred during the marriage. The trial court divided the debt equally under R.C. 3105.171. This court does not find that the trial court's finding was against the manifest weight of the evidence, the trial court abused its discretion, or that the evidence establishes financial misconduct on Melissa's part.

{¶ 89} The sixth assignment of error is overruled.

### G. Spousal Support

{¶ 90} "The award of spousal support lies within the sound discretion of the trial court and will not be reversed absent an abuse of discretion." *Hloska v. Hloska*, 8th Dist. Cuyahoga No. 101690, 2015-Ohio-2153, ¶ 12, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 130, 541 N.E.2d 597 (1989).

{¶ 91} "The goal of spousal support is to reach an equitable result," and "there is no set mathematical formula to reach this goal." *Id*. at ¶ 11, citing *Kaechele*,

35 Ohio St.3d 93, 96, 518 N.E.2d 1197 (1988). The trial court must consider the R.C. 3105.18(C)(1) factors but is "not required to comment on each statutory factor." *Chattree*, 2014-Ohio-489, 8 N.E.3d 390, at ¶ 71 (8th Dist.), citing *Kaechele* at 96.

{¶ 92} An appellate court will uphold the award where "the record reflects that the trial court considered the statutory factors" and "the judgment contains details sufficient for a reviewing court to determine that the support award is fair, equitable, and in accordance with the law." *Id.*, citing *Daniels v. Daniels*, 10th Dist. Franklin No. 07AP-709, 2008 Ohio App. LEXIS 772 (Mar. 4, 2008), *9, citing *Schoren v. Schoren,* 6th Dist. Huron No. H-04-019, 2005-Ohio-2102, ¶ 11.

{¶ 93} R.C. 3105.18(C)(1) addresses

(1) the parties' incomes including, but not limited to, from property received under R.C. 3105.171; (2) the relative earning abilities of the parties; (3) the ages and physical, mental, and emotional conditions of the parties; (4) retirement benefits of the parties; (5) duration of the marriage; (6) inability of party to seek outside employment due to custody of minor child; (7) the standard of living of the parties established during the marriage; (8) the relative education of the parties; (9) the relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (10) each party's contribution to the education, training or earning ability of the other; (11) the time and expense necessary for the spouse seeking support to acquire education, training, or job experience to obtain employment; (12) tax consequences of an award; (13) lost income production capacity due to the party's marital responsibilities; and (14) any other factor that the court expressly finds to be relevant and equitable.

*See* R.C. 3105.18(C)(1).

## 1. Duration

{¶ 94} We address Gregg's seventh assignment of error and Melissa's second cross-assignment of error together because each challenges the trial court's decision on the duration and amount of spousal support.

{¶ 95} The trial court awarded $25,000 per month for a term of 96 months to Melissa. Gregg concedes that the trial court discussed the relevant factors but argues the court drew the wrong conclusions on the amount and duration of the award. Melissa cross-claims that the award duration should be indefinite.

{¶ 96} Gregg first takes issue with the trial court's R.C. 3105.18(C)(1)(c) finding regarding the "physical, emotional and mental conditions of the parties." Gregg argues he was not given notice of Melissa's mental health issues and no expert testimony was provided. The trial court held:

> Plaintiff is currently 50 years of age and testified she suffers from dyslexia, depression and anxiety. No medical or expert testimony was offered as to the impact of her issues. Defendant is currently 48 years of age and has a myriad of heart conditions. No expert or medical testimony was presented as to the effect said issues impact his daily living.

Journal entry No. 126093759, p. 6 (July 11, 2022).

{¶ 97} Melissa is correct that it "'is not necessary for a party to present expert medical testimony substantiating certain medical problems where the injured party testifies and is subject to thorough cross-examination.'" *Ernsberger v. Ernsberger*, 8th Dist. Cuyahoga No. 100675, 2014-Ohio-4470, ¶ 44, quoting *Gullia v. Gullia*, 93 Ohio App.3d 653, 662, 639 N.E.2d 822 (8th Dist.1994), citing

*Denney v. Denney*, 2d Dist. Montgomery No. 8667, 1985 Ohio App. LEXIS 5687 (Jan. 25, 1985).

{¶ 98} The parties were subject to cross-examination. The trial court expressly noted the health conditions of both parties in the decree and stated that neither party provided expert or medical testimony regarding the afflictions and their impact on their respective lifestyles.

{¶ 99} This court does not find that the trial court abused its discretion.

{¶ 100} Next, Gregg contests the trial court's R.C. 3105.18(C)(1)(e) finding that "the parties were married on July 12, 1997, and the termination date is May 10, 2021, resulting in a long-term marriage of twenty-four (24) years." Journal entry No. 126093759, p. 6 (July 11, 2022). Gregg advances that the support period would have been limited to 80 months instead of the 96 months awarded if the trial court had accepted Gregg's proposed de facto termination date. This court overruled Gregg's first assigned error on the issue, which renders this argument moot.

{¶ 101} R.C. 3105.18(C)(1)(i) directs the trial court to consider the "relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties." The divorce decree provided "see aforementioned division of property." Gregg asserts the trial court failed to consider the duration of temporary spousal support in arriving at the period of post-decree spousal support as stated in the temporary order.

{¶ 102} Pursuant to the temporary support order, Gregg was directed to pay $10,000 per month, plus a two percent processing charge. The order provided that

the temporary support order duration would be considered in determining the duration of post-decree spousal support at final trial. The trial court indicated in the decree under R.C. 3105.18(C)(1)(a) regarding the parties' incomes from all sources that Melissa "has been receiving $10,000.00 per month as support since December 2017." Journal entry No. 126093759, p. 6 (July 11, 2022).

{¶ 103} The record reflects that the issue of temporary support was considered during trial and in the final decree. This argument also lacks merit.

{¶ 104} Finally, Gregg points out that under R.C. 3105.18(C)(1)(l), listed erroneously as (k) in the decree, the trial court decreed that spousal support is taxable income to the wife but is not deductible to the husband. Gregg offers that the directive is contrary to federal law. Melissa responds that Gregg's reliance on a typographical error is without merit and is harmless.

{¶ 105} As stated previously herein, under former 26 U.S.C. 71, separation agreements and decrees issued prior to December 31, 2018, resulted in taxable income to the obligee and a tax deduction for the obligor unless otherwise agreed by the parties. The Tax Cuts and Jobs Act of 2017 removed the provision. The temporary order in the instant case was issued prior to 2018, however the final decree was issued on July 11, 2022, after the January 1, 2019 effective date of the new tax law.

{¶ 106} In support of Melissa's cross-appeal quest for an indefinite award duration, Melissa cites cases by the Fifth, Eleventh, and Seventh Districts. Generally in the cited cases, the marriages lasted more than 20 years, the husbands earned

substantial incomes, and the wives were the primary caregivers for the children and had not been in the workforce for a substantial period. *See Speece v. Speece,* 2021-Ohio-170, 167 N.E.3d 1 (11th Dist.), *Batten v. Batten*, 5th Dist. Fairfield No. 09-CA-33, 2010-Ohio-1912, *Berger v. Berger*, 11th Dist. Geauga No. 2017-G-0108, 2017-Ohio-9329, *Hutta v. Hutta*, 177 Ohio App.3d 414, 2008-Ohio-3756, 894 N.E.2d 1282 (5th Dist.), *Ballas v. Ballas*, 7th Dist. Mahoning No. 04 MA 60, 2004-Ohio-5128.

{¶ 107} This court has also held that generally, where the marriage is one of long duration of 20 years or more, a trial court may, under certain circumstances, award spousal support of an indefinite duration. *See, e.g., Mlakar v. Mlakar*, 8th Dist. Cuyahoga No. 98194, 2013-Ohio-100, ¶ 25, citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 554 N.E.2d 83 (1990); *Coward v. Coward*, 5th Dist. Licking No. 15-CA-46, 2016-Ohio-670, ¶ 10. Duration is only a factor and cannot be viewed in a vacuum. *Smith v. Smith*, 8th Dist. Cuyahoga Nos. 110214, 110245, and 110274, 2022-Ohio-299, ¶ 42.

{¶ 108} Gregg argues that, unlike the wives in Melissa's cited cases, the trial court held under R.C. 3105.18(C)(1)(b) regarding relative earning ability that 50-year-old Melissa was a technical recruiter prior to having children.[6] As compared to Gregg's salary in excess of $1 million, the trial court imputed minimum wage to Melissa because she "testified she has numerous skills that presented during her

---

[6] The first child was born in 2000.

raising of the parties' four children." Journal entry No. 126093759, p. 6 (July 11, 2022).

{¶ 109} According to the record, Melissa testified that she served as the chef, laundress, doctor, chauffeur, and everything else for the children, but testified that those tasks did not translate into marketable skills. She also testified that though the children are emancipated, there are expenses related to assisting them.

{¶ 110} The record reflects that the trial court considered the requisite factors under R.C. 3105.18(C)(1). "It is well settled that when testimony is in dispute, we defer to the trier of fact's credibility determination." *Smith v. Smith*, 8th Dist. Cuyahoga Nos. 110214, 110245, and 110274, 2022-Ohio-299, ¶ 28, citing *Fanous v. Ochs*, 8th Dist. Cuyahoga No. 98649, 2013-Ohio-1034, ¶ 18.

{¶ 111} A trial court has jurisdiction to modify a spousal support award where the divorce decree expressly reserves that right. *Morris v. Morris*, 148 Ohio St.3d 138, 2016-Ohio-5002, 69 N.E.3d 664, ¶ 57; R.C. 3015.18(E). In the instant case, we observe that the trial court reserved jurisdiction to modify the order where the petitioner establishes a significant change of circumstances. *Taylor v. Heary*, 8th Dist. Cuyahoga No. 107474, 2019-Ohio-3094, ¶ 29, citing *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, paragraph two of the syllabus; R.C. 3105.18(F).

{¶ 112} Melissa's second cross-assignment of error is overruled. Gregg's seventh assignment of error is overruled in part and sustained in part. The case is remanded to the trial court to clarify whether the trial court's intent was to maintain

the status quo or to direct that the award be governed by the tax law in effect at the time of the final decree.

### 2. Award amount

{¶ 113} Gregg argues as his eighth and final assignment of error that the trial court failed to explain the grounds for the $25,000 award amount based on the R.C. 3105.18(C) factors and the findings are contrary to the evidence.

{¶ 114} He states that the primary expenses considered in making the 2017 temporary spousal support award to Melissa no longer exist, particularly since the Marital Residence was sold and the children are emancipated. Gregg also references the $19,344 annual minimum wage income imputed to Melissa by the trial court. Based on Gregg's calculations, Melissa's expenses are $16,350 per month at most. Thus Gregg advances that the trial court's $25,000 award is an abuse of discretion.

{¶ 115} Melissa responds that Gregg purposely reduced his income for the year the divorce was filed for purposes of support liability and that Gregg failed to make all of the payments due under the temporary order. The trial court considered, under R.C. 3105.18(C)(1)(g), that Gregg has been able to maintain the "exorbitant" standard of living of the parties such as "luxury vehicles, million-dollar homes, country club memberships and vacations." Melissa "has had to resort to a more modest lifestyle." The trial court also added that the "amount includes all applicable spousal support and payment towards arrearage."

{¶ 116} Where the record evidences the trial court's consideration of the statutory allocation factors, and "the judgment contains details sufficient for a

reviewing court to determine that the support award is fair, equitable, and in accordance with the law," the determination will be upheld. *Chattree*, 2014-Ohio-489, 8 N.E.3d 390, at ¶ 71 (8th Dist.), citing *Daniels v. Daniels*, 10th Dist. Franklin No. 07AP-709, 2008 Ohio App. LEXIS 772, 9 (Mar. 4, 2008), citing *Schoren v. Schoren*, 6th Dist. Huron No. H-04-019, 2005-Ohio-2102, ¶ 11.

{¶ 117} We do not find that the trial court abused its discretion. The eighth assignment of error is overruled.

## V. Cross-Appeal

### A. Retroactive Temporary Support

{¶ 118} Melissa's first cross-assignment of error is the trial court's failure to retroactively rule on Melissa's motion to modify temporary support filed on November 13, 2020.

{¶ 119} The temporary support order was issued on December 13, 2017. On February 20, 2018, Melissa requested the order be effective retroactive to the June 2017 date of her initial motion for support, spousal support of $15,000 per month, $500 of child support per child, plus prior expenses ordered. On December 18, 2017, each party requested a hearing under Civ.R. 75(N). On February 26, 2018, the trial court issued the following entry:

> This cause came before the Court on Plaintiff's Motion for a 75(N)(2) Hearing (#407094). Parties' counsel agreed to brief the issues pertaining to modification of the temporary support orders. The Temporary Support order issued on December 12, 2017 shall remain in full force and effect until the final disposition of this matter.

Journal entry No. 102688361 (Feb. 26, 2018).

{¶ 120} Melissa's November 13, 2020, motion cites a substantial change in circumstances including an increase in Melissa's expenses, the children's expenses, and a change in income of the parties.

{¶ 121} Temporary spousal support may be awarded under R.C. 3105.18(B). The parties agree that the purpose of a temporary support order is to "maintain the present financial status quo of the parties' marriage" and "support the economically disadvantaged party" while the case is pending. *Dilacqua v. Dilacqua*, 88 Ohio App.3d 48, 54, 623 N.E.2d 118 (9th Dist.1993), *Soley v. Soley*, 101 Ohio App.3d 540, 548, 655 N.E.2d 1381 (6th Dist.1995). Melissa adds that a temporary support order is a provisional remedy that may be retroactively modified to the date of filing, citing *Thorp v. Thorp*, 11th Dist. Trumbull No. 2010-T-0038, 2011-Ohio-1015, ¶ 55.

{¶ 122} Melissa argues that Gregg's $936,000 income for 2017 was intentionally suppressed because it averaged $1.2 million for 2016 and 2018 through 2021 and his direct expense payments regarding the former Marital Residence were overstated. Spousal support was inadequate and unreasonable based on the facts and circumstances. Melissa also argues that Gregg's household income increased "substantially" when he began cohabitating with Nakkache.

{¶ 123} Gregg responds that in addition to the $10,000 monthly spousal support, he paid the expenses for the Marital Residence until it was sold during the summer of 2019. Gregg then paid approximately $3,500 per month for Melissa's rent, storage fees, and renter's insurance of approximately $750 per month, moving expenses of $5,000 and a $4,000 rent deposit. Gregg contends that he also paid the

monthly family cell phone bill that included Melissa, and medical coverage included Melissa.

{¶ 124} The trial court stated that the $25,000 monthly sum and 96-month duration of support in the final decree included "all applicable spousal support and payment toward arrearage." The trial set forth its findings, declared that "[a]ny motion not specifically addressed in the following decision, is hereby denied," and retained jurisdiction to address modifications.

{¶ 125} "The goal of spousal support is to reach an equitable result." *Kehoe*, 8th Dist. Cuyahoga No. 99404, 2013-Ohio-4907, at ¶ 13, citing *Kaechele*, 35 Ohio St.3d 93, 96, 518 N.E.2d 1197 (1988), paragraph one of the syllabus. "While there is no set mathematical formula to reach this goal, the Ohio Supreme Court requires the trial court to consider all 14 factors of R.C. 3105.18(C) and 'not base its determination upon any one of those factors taken in isolation.'" *Id.,* quoting *id.*

{¶ 126} On the issue of child support under R.C. 3119.04, Melissa presents similar arguments regarding disparities in income and argues that Gregg's child support obligation including cash medical support should have been $9,274.06 per month effective November 13, 2020. The record reflects that Gregg paid child support, tuition, and other child-related expenses. The trial court ordered that Gregg pay any outstanding medical expenses. We reiterate that the trial court denied motions that were not specifically addressed.

{¶ 127} The trial court considered the required factors in this case. We do not find that the trial court abused its discretion.

{¶ 128} The first cross-assignment of error is overruled.

**B.      Cross-examination of Nakkache**

{¶ 129} Having addressed Melissa's second cross-assignment of error in combination with Gregg's seventh assigned error, we move on to Melissa's third cross-assignment of error that challenges the trial court's refusal to allow additional cross-examination of Nakkache.  We apply an abuse of discretion standard to a trial court's cross-examination limitation.  *State v. Edwards*, 8th Dist. Cuyahoga No. 87587, 2006-Ohio-5726, ¶ 18, quoting *Calderon v. Sharkey* 70 Ohio St.2d 218, 436 N.E.2d 1008 (1982), syllabus.  As evidenced by the provisions of Evid.R. 611(A), "'[t]rial courts are given great deference in controlling their dockets, and therefore, a reviewing court uses an abuse of discretion standard when reviewing a trial court's requirements in this area.'" *In re A.L.*, 8th Dist. Cuyahoga No. 99040, 2013-Ohio-5120, ¶ 14, quoting *Mathewson v. Mathewson*, 2d Dist. Greene No. 05-CA-035, 2007-Ohio-574, ¶ 26.

{¶ 130} Melissa states that Nakkache was called in Melissa's case in chief on May 12, 2021, but the testimony was not completed. Nakkache's counsel was unavailable for the next day of trial.  Nakkache appeared on June 8, 2021, for cross-examination but failed to bring certain subpoenaed documents in the morning, and returned in the afternoon with a portion of the documents.  The trial court terminated cross-examination at the end of the next day with additional trial dates to be selected.

{¶ 131} On October 5, 2021, Nakkache opposed Melissa's September 23, 2021 motion to compel nonparty Nakkache to comply with discovery. The subpoenas involved were issued directly to the financial institutions, yet Melissa sought to compel Nakkache to supply her social security number to facilitate securing the third-party records. The trial court held that Melissa could discover the information without the social security number. "Further, the Court has already heard, at length, testimony regarding Defendant and Ms. Nakkache's wedding and sharing of expenses." Journal entry No. 119044804, p. 2.

{¶ 132} On March 3, 2022, Melissa subpoenaed Nakkache's trial appearance for March 7 through March 11, 2022. Nakkache responded with a motion to quash where she argued the subpoena subjects her to an undue burden and does not permit reasonable time to comply. Nakkache declared she had already testified extensively, and the sole purpose of the subpoena was to harass and greatly inconvenience her. The trial court ruled:

> The Court agrees with Ms. Nakkache. As this Court previously stated, it has already heard lengthy testimony from Ms. Nakkache regarding Defendant and Ms. Nakkache's sharing of expenses. Requiring Ms. Nakkache to appear for an additional five (5) days of trial would clearly subject her to an undue burden.

Journal entry No. 121683524, p. 1 (Mar. 7, 2022).

{¶ 133} Melissa argues that cross-examination should not have been limited because the evidence was relevant under Evid.R. 611, "[m]ode and order of interrogation and presentation," which provides in pertinent part:

(A) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

(B) Scope of cross-examination. Cross-examination shall be permitted on all relevant matters and matters affecting credibility.

*Id.*

{¶ 134} This court has held: "'Evid.R. 611 provides that the court "shall exercise reasonable control" over the mode and manner of interrogation of witnesses and presentation of evidence.'" (Emphasis omitted.) *M.D. v. M.D.*, 2018-Ohio-4218, 121 N.E.3d 819, ¶ 54 (8th Dist.), quoting *Loewen v. Newsome*, 9th Dist. Summit Nos. 25559 and 25579, 2012-Ohio-566, ¶ 15, citing Evid.R. 611(A). This authority allows the court "'to avoid a needless consumption of time and/or harassment of witnesses, but also [to do so] in a manner that preserves the truth-seeking function of the proceedings.'" *Id.*, quoting *id.*, citing *id.*

{¶ 135} In fact:

Trial judges may impose reasonable limits on cross-examination based on a variety of concerns, such as harassment, prejudice, confusion of the issues, the witness's safety, repetitive testimony, or marginally relevant interrogation. *Mueller v. Lindes*, Cuyahoga App. No. 80522, 2002 Ohio 5465; *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 89 L.Ed.2d 674, 106 S.Ct. 1431 (1986). Further, not all error pertaining to limitations on cross-examination is reversible error. *State v. Long*, 53 Ohio St.2d 91, 97-98, 372 N.E.2d 804 (1978).

*Edwards,* 8th Dist. Cuyahoga No. 87587, 2006-Ohio-5726, ¶ 17.

{¶ 136} Based on this court's review of the voluminous record, we do not find the trial court abused its discretion. The third cross-assignment of error is overruled.

### C.     Attorney Fees

{¶ 137} Melissa's rejects the trial court's denial of attorney fees under her fourth and final cross-assignment of error. Payment of attorney fees in divorce proceedings is governed by R.C. 3105.73. A court may award fees where the court deems the payment to be equitable under the circumstances. "'[T]he court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.'" *Walpole*, 8th Dist. Cuyahoga No. 99231, 2013-Ohio-3529, citing *Gourash v. Gourash*, 8th Dist. Cuyahoga Nos. 71882 and 73971, 1999 Ohio App. LEXIS 4074 (Sept. 2, 1999), R.C. 3105.73(A). "The decision to award attorney fees rests in the sound discretion of the court and will not be overturned on appeal absent an abuse of discretion." *Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 65, citing *Layne v. Layne*, 83 Ohio App.3d 559, 568, 615 N.E.2d 332 (2d Dist.1992).

{¶ 138} The trial court decreed:

> The Court finds, based on the evidence and testimony from both parties, that neither negotiated in good faith attempts to settle this matter. Both parties conducted themselves in such a way to harass and intimidate the other to kowtow to their wishes. The Court finds throughout this matter, neither party was credible with their testimony and both should pay their own attorney fees.

Journal entry No. 126093759, p. 10 (July 11, 2022).

{¶ 139} We do not conclude that the trial court's denial of attorney fees was an abuse of discretion.

{¶ 140} The fourth cross-assignment of error is overruled.

## VI.    Conclusion

{¶ 141} We find the following:

Gregg's first assignment of error is overruled.

The second assignment of error is overruled in part and sustained in part. The trial court's award of the remaining funds in the IOLTA account to Melissa is affirmed. The case is remanded for the limited purpose of correcting the decree to reflect that the medical fund amount was $150,000. The trial court's award for the 2014 and 2020 flood proceeds is reversed and remanded pursuant to this opinion.

The third assignment of error is overruled.

The fourth assignment of error is overruled.

The fifth assignment of error is overruled.

The sixth assignment of error is overruled.

Gregg's seventh assignment of error is overruled in part and remanded for the sole purpose of addressing the R.C. 3105.18(C)(1)(l) factor regarding whether taxation of the spousal support is to be governed by the tax law in effect at the time of the temporary support order or the tax law in effect at the time of the final spousal support decree.

Gregg's eighth assignment of error is overruled.

Melissa's first, second, third, and fourth cross-assignments of error are overruled.

It is ordered that appellant and appellee equally share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, ADMINISTRATIVE JUDGE

MARY EILEEN KILBANE, J., and
MICHAEL JOHN RYAN, J., CONCUR