[Cite as *Bertalan v. Bertalan*, 2025-Ohio-1443.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CHRISTINE M. BERTALAN,  :

    Plaintiff-Appellee,  :

    No. 113619

    v.  :

GEORGE A. BERTALAN,  :

    Defendant-Appellant.  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 24, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-21-384906

---

### *Appearances:*

George A. Bertalan, *pro se.*

Laubacher & Co., Eric R. Laubacher, and Cara M. Finnegan, *for appellee.*

DEENA R. CALABRESE, J.:

{¶ 1} Defendant-appellant George A. Bertalan ("Husband") appeals the nunc pro tunc decree of divorce issued by the Cuyahoga County Common Pleas Court, Division of Domestic Relations, on January 8, 2024, as well as the domestic

relations court's denial of his motion for new trial on January 9, 2024. After reviewing the facts of the case and pertinent law, we affirm the trial court's decisions.

## I. Procedural History and Factual Background

{¶ 2} Husband and Christine M. Bertalan ("Wife") were married January 18, 2015. Twin children were born in 2015 as issue of the marriage. Wife also has two children from a previous relationship. Husband and Wife maintained a family home in Rocky River, Ohio.

{¶ 3} Husband obtained the degree of medical doctor and subsequently worked at various times, but not continuously, in the healthcare industry. According to multiple documents in the record, some filed by Husband himself, Husband has an extensive history of mental-health issues, and manifestations of that continuing affliction loomed over the proceedings. At the time of trial, Husband's license to practice medicine had been suspended due to his mental-health issues, and he was working outside the medical field.

{¶ 4} Wife filed her complaint for divorce on April 15, 2021.[1] The same day she filed her complaint, Wife filed a motion for emergency temporary custody and to appoint a guardian ad litem for the children, expressing concerns regarding Husband's mental health. The trial court granted Wife's motion for emergency temporary custody on April 19, 2021.

---

[1] Wife has been represented by the same counsel throughout the trial court proceedings and in this appeal. We note this only because, as discussed below, Husband's status has shifted between represented and pro se multiple times during the course of this litigation.

{¶ 5} Counsel for Husband entered an appearance on April 20, 2021, but did not file an answer or other responsive pleading. The case was nevertheless not treated as an uncontested case, principally due to parenting issues related to Husband's mental health, issues involving spousal and child support, and Husband's purported mishandling of certain real estate holdings, including both failure to pay the mortgage on the marital residence and his attempt to sell a separate condominium unit without Wife's consent or a court order. The case also presented discovery issues involving sensitive mental-health records and the suspension of Husband's medical license.

{¶ 6} The trial court appointed a guardian ad litem for the couple's minor children and issued orders related to the manner of communications and temporary parenting. A court magistrate issued a temporary support order on July 13, 2021. Additional motion practice followed, including an August 10, 2021 motion for a referral to family evaluation services to address Husband's mental-health issues.

{¶ 7} On October 21, 2021, barely six months into the case, Husband's counsel moved to withdraw, citing Prof.Cond.R. 1.16(b) and indicating it would not result in material prejudice to Husband. There is nothing in the record indicating the trial court held a hearing or otherwise made further inquiries into the reason for withdrawal. The trial court granted the motion to withdraw by journal entry filed October 26, 2021.

{¶ 8} Between October 26, 2021, and June 30, 2022, a period of just over eight months, Husband represented himself. Within that time frame, on March 15,

2022, Wife filed a second emergency motion, this time requesting immediate suspension of Husband's parenting time due to concerns about Husband's mental health. The court initially granted the motion, but later adopted an agreed judgment entry calling for closely supervised visits.

{¶ 9} Wife filed a third emergency motion, also directed at suspending Husband's parenting time, on June 17, 2022. The trial court granted that emergency motion.

{¶ 10} In addition to the referenced emergency motions related to issues arising from Husband's mental health, the record reflects that Wife filed numerous show-cause motions over the course of the litigation. On May 5, 2022, Wife filed a motion to show cause with respect to a magistrate's order of temporary child support. She argued that Husband had "failed to pay his child support obligation," with a total outstanding balance of $11,704.48, even though he was purportedly earning more than when the support obligation was originally calculated. The same motion also alleged that Husband had failed to reimburse Wife for uncovered medical expenses with respect to one of the minor children.

{¶ 11} A new attorney entered an appearance on Husband's behalf on June 30, 2022. On July 6, 2022, Wife filed a motion to show cause with respect to Husband's alleged violation of the court's mutual restraining order issued at the inception of the case. According to Wife's attached affidavit, she learned that Husband was planning to sell certain real property in which she had an interest, specifically a condominium unit located in Fairview Park, Ohio. Wife stated she had

not consented to the sale of the property and that Husband had not sought a court order before listing the property for sale. Wife also alleged that Husband had been deceptive, indicating to her through the Our Family Wizard communication platform on June 14, 2022, that he did not intend to sell the property. His message, attached to Wife's affidavit, indicates, "I am not going to sell my mom's condo because I don't want her to move."[2] Wife nevertheless learned on July 3, 2022, through the Zillow website, that the property had been listed for sale.[3]

{¶ 12} Wife filed a third motion to show cause on August 3, 2022. Wife alleged that Husband failed to comply with the April 23, 2021 order that required the parties to communicate using the Our Family Wizard platform. More specifically, Wife contended that Husband "has chosen to continuously send denigrating, excessive, and threatening communication to [Wife], both via Our Family Wizard and through alternate means of communication (including but not limited to text messages)." At one point, according to Wife's affidavit and incorporated attachments, Husband threatened that if she did not comply with his demands, "it is only going to end poorly for you not for me." Noting that Husband

_____

[2] Despite Husband's reference to "my mom's condo," Wife's averred in her affidavit that the subject property was titled in Husband's name only.

[3] The July 6, 2022 motion was resolved by an agreed judgment entry filed August 2, 2022, which partially dissolved the mutual restraining order. In short, the agreed judgment entry permitted the sale of the subject condominium unit, with net proceeds to be held in the IOLTA account of Husband's attorney pending further court order. In September and November 2022, the court approved agreed judgment entries permitting the release of the funds to satisfy, at least for the time being, Husband's child support arrearage.

was once again represented, counsel for Wife indicated that after communicating with Husband's attorney, the situation improved "slightly," but that Husband shortly thereafter began harassing Wife, accusing her of committing an "intentional tort" and again improperly communicating with her via text messages.

{¶ 13} Wife filed a motion on October 14, 2022, requesting forensic evaluation of Husband with respect to his mental health. Husband — still represented by counsel at this point — did not file a response. The trial court granted the motion on November 8, 2022.

{¶ 14} Further motion practice followed, including yet another emergency motion, this one for supervised parenting activities. Wife filed that emergency motion on November 28, 2022. It was premised yet again on Husband's mental-health issues. The same day, Husband filed a motion to expand his parenting time. The trial court granted Wife's motion on December 1, 2022.

{¶ 15} Motion practice continued in January 2023, including Husband's motion to modify temporary support and Wife's motion for immediate sale of the marital residence. The court delayed its ruling on the latter motion after Husband opposed it. Husband stated in his opposition brief that there was no urgency to sell the marital residence due to his ability to make mortgage payments. By order dated March 20, 2023, the trial court directed Husband to submit evidence that he had been making the referenced payments.

{¶ 16} Husband did not submit the required evidence. This led to yet another show-cause motion filed by Wife on April 7, 2023, plus Wife's renewed motion for

immediate sale of the marital residence.  In the renewed motion, filed May 5, 2023, Wife submitted documentation indicating Husband had not, in fact, made mortgage payments.  The trial court granted Wife's motion for immediate sale on May 16, 2023.

{¶ 17} In the midst of all this motion practice, the trial court also addressed scheduling issues.  Following an attorney conference, the trial court docketed a scheduling order on March 21, 2023.  That entry, which appears to be the first and only trial scheduling order, set trial for June 27 - June 29, 2023.  June 27, 2023, was 26 months and 12 days after Wife filed her complaint.

{¶ 18} With trial scheduled, motion practice continued.  In addition to the show-cause motion and motion for immediate sale referenced above, Husband filed his own emergency motion on April 14, 2023, seeking permission for the minor children to have time with their "dying grandmother."  Wife opposed the motion based on supervision issues.  The guardian ad litem weighed in as well, recommending a specific private supervisor.  The trial court granted Husband's emergency motion on April 20, 2023.  It allowed the visits but appointed the private supervisor recommended by the guardian ad litem.  In addition, on May 2, 2023, following an attorney conference, the trial court granted a motion to compel discovery, filed by wife, that had been pending since June 22, 2022.

{¶ 19} On May 17, 2023, Husband's counsel moved to withdraw. Counsel did not state that withdrawal was mandatory.  He merely stated that "[t]he within request for withdrawal is made pursuant to Ohio Rules of Professional Conduct

1.16(b)(1) and 1.16(b)(6)." The reference to subsection (b)(6) indicates that continued "representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client[.]" The reference to subsection (b)(1) indicates the attorney's representation that "withdrawal can be accomplished without material adverse effect on the interests of the client[.]" No affidavit accompanied the motion.

{¶ 20} Contemporaneously with the motion to withdraw, counsel filed a motion to continue trial. Counsel stated that his client "requires" a continuance. He did not, however, propose a specific length of time or suggest an alternative trial date.

{¶ 21} The trial court did not hold a hearing on the motion to withdraw. On May 18, 2023, the trial court granted the motion to withdraw but denied the motion to continue the trial.

{¶ 22} Motion practice continued prior to trial. On May 23, 2023, Wife filed a motion to show cause and a motion seeking her attorney fees and litigation expenses due to Husband's failure to comply with the May 2, 2023 order requiring Husband to produce discovery responses. The trial court deferred that motion to trial. On May 30, Wife filed additional show-cause and attorney-fee motions, this time due to Husband's failure to comply with the trial court's order requiring sale of the marital residence.

{¶ 23} On June 7, 2023, a court magistrate denied Husband's January 2023 motion to modify temporary support. The magistrate noted that while the motion

had been set for eight attorney conferences, the parties had been unable to reach an agreement. The magistrate further noted that the parties agreed to submit the issue on briefs, with Husband's deadline set for June 5, 2023, and that Husband failed to submit a brief.

{¶ 24} The trial court issued a trial order on June 15, 2023. Wife timely complied, filing a trial brief and witness and exhibit lists prior to trial. Husband did not comply with the order, failing to file a trial brief or witness and exhibit lists.

{¶ 25} The case was called for trial on June 27, 2023. Wife appeared with her attorney. Husband appeared pro se. The court did not take testimony that day. Instead, with the guardian ad litem present, the parties engaged in extensive negotiations with respect to parenting issues. After negotiations, the parties reached an agreement and entered into a parenting plan setting forth parental rights and responsibilities. Every page of the parenting plan was initialed by both Wife and Husband. In addition, there are several handwritten changes that inure to Husband's benefit. Those handwritten changes were also initialed by both parties.

{¶ 26} The parties appeared for the second day of trial on June 28, 2023. Wife again appeared with counsel. Husband appeared pro se and was approximately two hours late. Once again, the trial court allowed the parties to meet in hopes of reaching a global resolution of their remaining disputes. While Wife had hoped to engage in continued negotiations like the day before, this time focused on the division of assets and liabilities, Husband reportedly refused to negotiate, indicating he would not do so without representation and that he planned to file a

motion to continue the trial. In short, unlike the previous day, where the parties had managed to successfully negotiate a highly detailed parenting plan, the parties did not resolve their financial disputes.

{¶ 27} The same day, at 1:33 p.m., despite having appeared the previous day and negotiating the parenting plan, Husband filed a motion to continue the trial. His form motion, completed by hand, included an attached item captioned as an affidavit. The attachment, however, is not dated by a notary, does not contain a stamp identifying a notary, and does not bear the signature of a notary. In that document, Husband indicated that he suffered a head injury on June 24, 2023 — three days before he appeared pro se for the first day of trial and successfully negotiated the parenting plan. Husband stated that the head injury "temporarily affected [his] ability to properly understand and defend [himself]." Husband further stated that he was the "sole caregiver and POA" for his mother, and that due to her declining health he urgently needed to find new living arrangements for her "to properly care for her and protect her well being." Husband did not attach any additional documentation, such as medical records supporting his claim of a head injury and associated incapacity or documents referencing his mother's purported need for his urgent and undivided attention.

{¶ 28} Later that afternoon, Wife filed both a brief in opposition to Husband's motion to continue the trial and a motion for attorney fees. The brief in opposition set out the procedural background of Husband's tardiness on June 28 and his refusal to negotiate and argued that his request for a continuance was not

adequately supported. Wife's brief further suggested that Husband's reasons for requesting a continuance were disingenuous, especially given that he had appeared the previous day and negotiated with respect to parenting issues. Wife also claimed that Husband had contacted her attorney the previous week — before the alleged head injury — requesting they agree to continue the trial while he sought legal representation. The motion for attorney fees sought compensation for the essentially wasted opportunity to negotiate on June 28, as well as counsel's fees for responding to Husband's motion to continue.

{¶ 29} Trial resumed on June 29, 2023. Wife appeared with counsel. Husband did not appear. The trial court went on the record and immediately addressed the June 28 motion to continue, treating it as a motion to vacate. The trial court stated it "was going to treat said Motion to Continue as a Motion to Vacate based on what [Husband] said in his Motion to Continue, but he's once again at 10:36 is not present." (Tr. 5.) The trial court also noted that Wife had filed a motion to adopt the parenting plan that the parties had successfully negotiated. It granted the latter motion on the record. (Tr. 5.)

{¶ 30} The trial court then took testimony and received exhibits regarding the division of marital property and debts, support, and attorney fees. Wife testified on her own behalf. She testified that she lived in an apartment with her children, while Husband continued to reside in the marital residence. Wife detailed her current employment at Ronald McDonald House Charities of Northeast Ohio, testifying to her duties and current annual salary. She further testified with respect

to a retirement account and life insurance policy through her current employer, as well as premarital retirement accounts. Wife also detailed Husband's employment history, including his work in hospice and palliative care for the Cleveland Clinic, University Hospitals, and other employers. Wife testified that after Husband lost his medical license, he worked at various jobs, including Whole Foods and Westlake Music Academy.

{¶ 31} Wife testified that Husband had not been consistent with child support payments during the pendency of the case, with only part of the substantial arrearage addressed through the proceeds of the condominium sale. She testified as to the status of the marital residence, which was then in foreclosure, and Husband's lack of cooperation with respect to selling the marital residence and his failure to disclose his retirement accounts in discovery. Her testimony also highlighted Husband's problematic communications with her, including communicating by means other than the Our Family Wizard platform and sending distressing text messages.

{¶ 32} In testifying regarding Husband's spending habits, Wife indicated that after the commencement of divorce proceedings and continuing to just prior to trial, he had expended approximately $64,000, all while not paying the mortgage on the marital residence. This included purchasing a BMW, travel that was evidently unrelated to business, a purchase of sports memorabilia, items from "Medieval Collectibles," $3,100 related to "Coinbase/Bitcoin," and $540 spent in one transaction at an Ohio gun shop. Wife testified that Husband had never disclosed

to her that he purchased the BMW and that whenever she went to the house, the BMW was "parked on the street a couple houses down." (Tr. 46.)

{¶ 33} Wife next called vocational consultant Anne Savage Veh, who testified concerning Husband's capacity to work and expected earnings. Veh was accepted by the court as an expert witness. She testified that Husband's medical license had been suspended in May 2023 and that he had begun working as a piano teacher. She opined that in that job, his expected earnings could vary between about $47,000 per year to $60,000 per year. With respect to possible reinstatement of Husband's medical license, she indicated that to her understanding, he was required to submit to two psychiatric assessments. Veh testified that if Husband had his license restored and returned to work in the medical field, he could earn between roughly $176,000 and $251,000 per year.

{¶ 34} Finally, Wife's counsel testified with respect to attorney fees incurred during the case. He focused on the many motions to show cause, as well as the delays and additional work related to Husband's financial irresponsibility, lack of cooperation, and failure to abide by court orders.

{¶ 35} After trial, but before entry of judgment, Husband filed two successive affidavits of disqualification with the Ohio Supreme Court seeking the removal of the trial court judge. The chief justice rejected both affidavits.

{¶ 36} The trial court originally filed a judgment entry of divorce on November 28, 2023. New counsel for Husband appeared on December 4, 2023. On December 22, 2023, Husband, through his new attorney, filed a motion for a new

trial. The motion accused Husband's former counsel of misconduct in both his handling of the case and his withdrawal so close to the trial date. Despite the chief justice's denial of Husband's two affidavits of disqualification, Husband also suggested in his motion that the trial judge was not impartial and favored Wife's counsel. The motion also attacked the trial court's decision to deny Husband's requested continuances.

{¶ 37} Based upon our review of the record, it appears the original judgment entry was not treated as a decree or served on the parties. After the original entry and while Husband's motion for a new trial was pending, the trial court issued a second judgment of divorce on December 28, 2023. *See* Judgment entry December 28, 2023, fn. 1. On January 4, 2024, Wife filed an opposition to Husband's motion for a new trial. On January 5, 2024, Wife filed a motion for a nunc pro tunc judgment entry to correct clerical errors due to inconsistencies between the two judgment entries of divorce.

{¶ 38} On January 8, 2024, the trial court issued a nunc pro tunc judgment entry of divorce pursuant to Civ.R. 60(a). That order, correcting clerical errors, superseded the November 28, 2023 and December 28, 2023 divorce decrees.[4] In any event, Husband has not pointed to any discrepancies among the three judgment entries as being relevant to this appeal.[5]

---

[4] *See, e.g., Bevan v. Bevan*, 2006-Ohio-2775, ¶ 2 (11th Dist.).

[5] To the extent necessary, specifics regarding property division and attorney fees will be addressed in our discussion of Husband's sixth assignment of error.

{¶ 39} Finally, on January 9, 2024, the trial court issued a decision denying Husband's motion for a new trial. It treated Husband's complaints about his former attorney as "ineffective assistance of counsel" arguments. The trial court noted that there is no right to counsel in civil litigation, and the concept of ineffective assistance of counsel was therefore inapplicable. With respect to the requested trial continuances, the court emphasized its inherent authority to manage its own docket. More specifically, with respect to the denial of the May 17, 2023 motion to continue, it pointed out that Husband had made only conclusory statements that five weeks was not sufficient time to obtain new counsel. With respect to the motion to continue filed on the second day of trial, the trial court remarked that Husband's statement with respect to his injury and his caregiver obligations was unsworn and also that he had appeared the previous day and participated in negotiations.

{¶ 40} Husband filed his notice of appeal on February 5, 2024. He attached the trial court's divorce decrees entered November 28, 2023, December 28, 2023, and January 8, 2024, as well as the trial court's entry of January 9, 2024, denying his motion for a new trial.[6]

---

[6] Husband's notice of appeal also included the trial court's judgment entry dated July 31, 2023, which ordered the immediate sale of the marital residence. While listed on the appearance docket as a "proposed judgment entry," with a caption to match, our review of the entry reveals it to be a judgment entry signed by the trial court judge. The trial court's final judgment entry of divorce, however, reflects that no sale had yet taken place. Disposition of the marital residence was therefore not finalized by this entry, but rather by the divorce decree entered months later. More fundamentally, with respect to the scope of our review, none of Husband's assignments of error address the July 31, 2023 judgment entry. App.R. 12(A) provides that "errors not specifically pointed out in the record and separately argued by brief may be disregarded" by an appellate court. *See, e.g., In re Guardianship of Williams*, 2022-Ohio-617, ¶ 26 (8th Dist.).

**{¶ 41}** Husband presents six assignments of error for our review:[7]

1. The trial court erred in denying the Appellant's request for an extension on May 17, 2023, after the Appellant's attorney . . . withdrew from representation on the same day, thereby depriving the Appellant of sufficient time to secure new counsel or prepare a reasonable defense. The trial court's refusal to grant a continuance under these circumstances violated the Appellant's right to a fair trial and resulted in undue prejudice.

2. The trial court erred in denying the Appellant's request for an extension on June 20, 2023, after being informed that the Appellant had suffered a concussion and was medically advised against representing himself at trial. The trial court's refusal to grant a continuance, despite clear medical evidence, violated the Appellant's right to a fair trial and subjected him to undue prejudice by forcing him to participate while medically incapacitated.

3. The trial court erred by failing to address the Appellant's motion for continuance on the second day of trial, when the presiding judge was not present in the courthouse despite being scheduled. The court's failure to rule on the motion deprived the Appellant of a fair opportunity to present his case and seek relief for his medical incapacity, which had been raised on the first day of trial.

4. The trial court erred by proceeding with the final day of trial on June 29, 2023, despite receiving medical documentation indicating that the Appellant was medically unfit to attend or represent himself. By disregarding the Appellant's medical condition and continuing with the trial in his absence, the trial court violated the Appellant's right to due process and a fair trial.

5. The trial court erred by failing to address the Appellant's concerns of judicial bias, misconduct, and potential retaliation, as outlined in two separate affidavits of disqualification filed against [the trial court] after the conclusion of the trial. These affidavits raised serious concerns regarding the fairness and impartiality of the trial court proceedings. The denial of the affidavits by the Supreme Court of Ohio, without a

---

[7] Husband's "Statement of Assignments of Error" beginning on the first page of his January 8, 2025 brief are significantly abbreviated. We have opted to quote Husband's assignments of error as they appear in the argument section of his brief.

hearing or substantive review, resulted in significant prejudice to the Appellant.

6. The trial court erred in issuing a final divorce decree that was grossly inequitable, awarding near complete total control of the marital assets to the Appellee. This included assets that the Appellee did not contribute to, while burdening the Appellant with the Appellee's attorney fees and an unfair division of retirement assets. The trial court's decision not only ignored principles of equitable distribution but also left the Appellant with severe financial burdens.

## II. Law and Analysis

### A. Denial of May 17, 2023 Motion to Continue Trial

{¶ 42} Husband's first assignment of error challenges the trial court's denial of his May 17, 2023 motion to continue the June 27, 2023 trial. We find no merit to this assignment of error.

{¶ 43} "A trial court has broad discretion in ruling upon a motion or request for a continuance of trial proceedings." *Bradley v. Bradley*, 2021-Ohio-2514, ¶ 79 (8th Dist.), citing *State v. Unger*, 67 Ohio St.2d 65 (1981), syllabus. In considering a motion to continue, the trial court must balance "'the court's interest in controlling its docket and the public's interest in an efficient judicial system with the possibility of prejudice to the defendant.'" *Wielgus v. Wielgus*, 2011-Ohio-1569, ¶ 10 (8th Dist.), quoting *Sayre v. Hoelzle-Sayre*, 100 Ohio App.3d 203, 208 (3d Dist. 1994).

{¶ 44} "[T]his court will not reverse the trial court's decision to deny a continuance absent an abuse of that discretion." *Bradley* at ¶ 79. A trial court "abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority." *Hunter v. Troutman*, 2025-Ohio-366, ¶ 64 (8th Dist.), citing *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

"The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Hunter* at ¶ 64; *see also Wielgus* at ¶ 9 (appellate court will not find error in denial of continuance unless it clearly appears there was an abuse of discretion resulting in prejudice); *Garrett v. Garrett*, 54 Ohio App.2d 25, 34 (1st Dist. 1977) (same).

{¶ 45} In *Unger*, the Ohio Supreme Court wrote:

> In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Unger* at 67-68. The Ohio Supreme Court later clarified *Unger* in two respects. First, it noted that its holding in *Unger* "does not suggest that information will always be available about each of these factors or require a court to assign particular weight to any one factor." *Musto v. Lorain Cty. Bd. of Revision*, 2016-Ohio-8058, ¶ 23. The *Musto* Court also emphasized that *Unger* was a criminal matter. *Id.*

{¶ 46} In the present case, we find and conclude that the trial court did not abuse its discretion or otherwise err in refusing to grant the May 17, 2023 motion to continue the trial. By order dated March 21, 2023, trial had been scheduled to begin June 27, 2023, with time allotted not only for trial that day, but the following two days as well. Even though Husband's counsel was later permitted to withdraw, the corresponding motion to continue sought an indefinite continuance. It did not

suggest a continuance for a specific amount of time (e.g., 90 days, 120 days, etc.) or suggest an alternative trial date. When the trial court granted counsel's motion to withdraw on May 18, 2023, that left 40 days in which Husband could have either sought new counsel or prepared for trial. As Wife points out, Husband's brief does not indicate why nearly six weeks was insufficient time to retain new counsel. The case was over two years old at the time of the May 17, 2023 motion to continue, principally due to Husband's own failure to cooperate in discovery and well-documented financial misconduct resulting in multiple show-cause motions. The trial court was well within its discretion to reject a request for an indefinite continuance. *Parks v. Parks*, 2020-Ohio-5356, ¶ 28-29 (2d Dist.). *See also Wielgus*, 2011-Ohio-1569, at ¶ 12 (8th Dist.) ("[G]iven the husband's previous dilatory conduct and refusal to comply with discovery demands, the trial court was within its discretion to deny the [trial] continuance.").

{¶ 47} We are also mindful of the inconvenience to Wife that would have been caused by granting an indefinite continuance. This is due not only to the length of time the case had been pending, but also because Wife had been preparing for trial. As noted during the trial itself, Wife's vocational expert had been called upon to update her expert report in April 2023, after trial had been scheduled and prior to the withdrawal of Husband's counsel. Further delays would likely mean additional expenses in that regard. The trial transcript also reflects that despite the trial court's orders, the marital home in Rocky River was in foreclosure and had not been sold. As Wife points out in her brief, she testified at trial that she was residing

in an apartment with her children. Delay of trial would mean further delay of finality for both her and the children.

{¶ 48} Finally, the motion to withdraw filed by Husband's counsel along with the motion to continue implicitly confirms that Husband contributed to the circumstances underlying the request for a continuance. As noted above, counsel's reference to Prof.Cond.R. 1.16(b)(6) indicates that continued "representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client[.]" Husband's previous counsel had also withdrawn from representation, leaving an approximately eight-month gap in which Husband represented himself. This not only suggests Husband contributed to the circumstances leading to the motion to continue but also bolsters the conclusion that an indefinite continuance would have unreasonably prolonged the proceeding and unfairly prejudiced Wife.

{¶ 49} While Husband leans heavily into the notion that he could not possibly mount a compelling defense without the assistance of counsel, it is axiomatic that "a party does not have a guaranteed right to counsel in a domestic relations proceeding." *Wielgus*, 2011-Ohio-1569, at ¶ 11 (8th Dist.), citing *Lentz v. Lentz*, 2006-Ohio-3168, ¶ 11 (8th Dist.). We find and conclude that the trial court did not abuse its discretion or otherwise err in denying Husband's May 17, 2023 motion to continue. We therefore overrule Husband's first assignment of error.

## B. Denial of June 28, 2023 Motion to Continue Trial

{¶ 50} Husband's second, third, and fourth assignments of error all relate to the trial court's denial of his motion to continue filed on the second day of trial (June 28, 2023) and its corresponding decision to proceed with the third day of trial on June 29, 2023, despite Husband's absence. We address these related assignments of error together, and we find they have no merit.

{¶ 51} We first note that Husband refers to a request for a continuance on June 20, 2023. The only motions to continue the trial were filed May 17, 2023, and June 28, 2023, the second day of trial. Based upon not only the record but the context in which Husband himself places the timing of the request for a continuance, we proceed on the assumption that he meant to reference the June 28, 2023 motion filed with the court.

{¶ 52} In our discussion of Husband's first assignment of error, we discussed relevant considerations for the trial court to consider when presented with a motion for continuance and also the standard of review we apply, namely, abuse of discretion. We will not repeat those legal principles here. Upon a thorough review of the record in light of applicable law, we find that the trial court did not abuse its discretion in denying the June 28, 2023 motion to continue and proceeding with trial in Husband's absence on June 29, 2023.

{¶ 53} Context is again important. While Husband's June 28, 2023 motion to continue the trial references a purported head injury on June 24, 2023, that was three days before his appearance on June 27. As discussed in the procedural history

above, not only did Husband appear on June 27, but he worked with Wife, Wife's counsel, and the guardian ad litem to successfully negotiate an agreed parenting plan. The plan included handwritten changes inuring to his benefit. He initialed every page, initialed every handwritten change, and signed the agreement. Moreover, none of Husband's assignments of error attack either the negotiation process or the detailed parenting plan itself, which the trial court subsequently adopted.

{¶ 54} Moreover, Husband's unsworn statement, attached to the June 28, 2023 motion to continue, did not include medical evidence of an injury, incapacity, or impairment. This leaves us with no indication in the record, apart from Husband's unsworn statement, that he was impaired in any fashion.[8] It also did not include documentation supporting his argument that his mother required such urgent intention that he needed to skip trial.

{¶ 55} Husband claims he sent an email to the trial court judge's bailiff with a medical excuse, and he attaches a copy of the purported correspondence to his brief. App.R. 9(A)(1) provides that the record on appeal consists of "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court shall constitute the record on appeal in all

---

[8] An affidavit is "a written declaration under oath, made without notice to the adverse party." R.C. 2319.02. "To constitute a valid affidavit, the statement must be signed by the affiant and notarized." *Gurary v. John Carroll Univ.*, 2024-Ohio-3114, ¶ 37-38 (8th Dist.).

cases." Husband's email is not part of the record. Accordingly, we disregard it. *See Hurley v. Betfair Interactive*, 2024-Ohio-5488, ¶ 8 (8th Dist.); *In re Q.S.*, 2023-Ohio-712, ¶ 105 (8th Dist.). *See also In re L.A.*, 2024-Ohio-3107, ¶ 10 (8th Dist.) ("[A]ttachments to the appellate brief that were not presented to the trial court are not part of the record and cannot be considered by this court.").[9]

{¶ 56} Wife opposed Husband's motion to continue, filing a brief on June 28, 2023. When the trial court called the case for trial on June 29, 2023, it referenced Husband's motion and indicated it would treat it as a motion to vacate. (Tr. 5.) Husband, however, did not appear to prosecute the motion or participate in the trial. The trial court granted Wife's motion to adopt the parenting plan. As discussed above, the court then proceeded to trial with respect to financial and other matters.

{¶ 57} In light of the factors noted in *Unger*, 67 Ohio St.2d 65, we again find and conclude that the trial court did not err. First, as with the previous motion to continue, the June 28, 2023 motion requested an indefinite continuance. Second, the inconvenience to the nonmoving party is even more pronounced here than with respect to the May 17, 2023 motion to continue. Wife, her counsel, and Wife's vocational expert were present on June 29, prepared for trial. Wife was ready to testify. The vocational expert was ready to testify. The parties had already made progress by negotiating the parenting plan, albeit without further success on

---

[9] While Husband referenced a phone conversation with the bailiff, as well as the email, in his motion for a new trial it appears to be undisputed that the phone conversation was entirely ex parte and that Wife's counsel was never served with whatever Husband sent the bailiff.

June 28, when Husband appeared but did not negotiate further with respect to financial issues. Third, the record indicates that Husband was aware of his mother's medical conditions and had time to make suitable arrangements prior to trial. On April 14, 2023, he filed an emergency motion to allow the children to spend time with their "dying grandmother." As Wife notes in her brief, this was after the trial had been scheduled. It was also more than two months before the trial itself. Husband had time to arrange appropriate care for his mother, especially when he knew that his May 17, 2023 motion to continue had been denied. In summary, whether with respect to his own purported injury or his mother's needs, Husband does not offer an adequate explanation for how he was able to appear on both June 27 and June 28, 2023 (with much progress made on June 27), but needed a continuance of the June 29 trial. We overrule Husband's second assignment of error.

{¶ 58} In his third assignment of error, Husband contends his rights were violated because the trial judge, unavailable when he filed his motion to continue at 1:33 p.m. on June 28, 2023, failed to rule on the motion the same day. Husband has provided no authority, however, to suggest a trial court judge is required to be "on call" to rule on a motion to continue the day it was filed, especially where the motion was contested, was not supported by an affidavit, and Husband had appeared that very day and the previous day without incident.

{¶ 59} Husband seems to ignore the fact that an immediate ruling would have given Wife no opportunity to respond to his written motion and that a brief in

opposition was in fact filed later that afternoon. He also ignores that while the trial court had not *granted* his motion by the end of the day, it also had not *denied* his motion. The transcript of the June 29, 2023 trial indicates the trial court's readiness to address the motion the morning of trial by construing it as a motion to vacate. Despite Husband's purported head injury and urgent need to attend to his mother, he had appeared in person on June 27 and spent the day negotiating. He had appeared in person on June 28. Husband offers no compelling excuse for his absence on June 29, when he could have appeared to prosecute his motion to continue. We find no merit to Husband's third assignment of error.

{¶ 60} Husband's fourth assignment of error principally reiterates the arguments made in his second assignment of error. We have found no merit to those arguments. With respect to trial in absentia, we recently reaffirmed that "where a party has entered an appearance but fails to appear for trial, the court may proceed with the trial ex parte in the opponent's absence[,]" so long as the parties have received adequate notice of the trial. *Motors, L.L.C. v. Kaba*, 2025-Ohio-640, ¶ 49-50 (8th Dist.). Here there is no question as to adequate notice; Husband appeared for the first day of trial as scheduled. The trial court did not err by proceeding with an ex parte trial. We overrule Husband's fourth assignment of error.

### C. Judicial Misconduct and Affidavits of Disqualification

{¶ 61} In his fifth assignment of error, Husband argues that the trial court "erred by failing to address the Appellant's concerns of judicial bias, misconduct, and potential retaliation, as outlined in two separate affidavits of disqualification,"

and also that "[t]he denial of the affidavits by the Supreme Court of Ohio, without a hearing or substantive review, resulted in significant prejudice to the Appellant." We find no merit to this assignment of error.

{¶ 62} Judicial bias is "'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by law and the facts.'" *Fisher v. Fisher*, 2011-Ohio-5251, ¶ 42 (8th Dist.), quoting *In re Adoption of C.M.H.*, 2008-Ohio-1694, ¶ 34 (4th Dist.). In *Fisher*, this court explained:

> [C]hallenges of judicial prejudice and bias are not properly brought before an appellate court. "Rather, appellant must make such a challenge under the provisions of R.C. 2701.03, which requires an affidavit of prejudice to be filed with the Supreme Court of Ohio." *Baker v. Ohio Dept. of Rehab. & Corr.*, 144 Ohio App.3d 740, 754, 761 N.E.2d 667. Only the chief justice of the Ohio Supreme Court or his [or her] designee has the authority to determine a claim that a common pleas court judge is biased or prejudiced. *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 441-442, 377 N.E.2d 775. Courts of appeals lack authority to void the judgment of a trial court on such basis. *Id.*

*Fisher* at ¶ 43. *See also Bradley*, 2021-Ohio-2514, at ¶ 86 (8th Dist.); *Johnson v. U.S. Title Agency, Inc.*, 2020-Ohio-4056, ¶ 101 (8th Dist.) (chief justice of the Ohio Supreme Court, or his or her designee, has exclusive jurisdiction to determine bias or prejudice of judge); *Gentile v. Gentile*, 2013-Ohio-1338, ¶ 58 (8th Dist.); *Krupar v. Krupar*, 1994 Ohio App. LEXIS 5277, *4 (8th Dist. Nov. 23, 1994).

{¶ 63} In general, therefore, "appellate courts have 'no authority to determine a claim that a trial judge is biased or prejudiced against a defendant and

no authority to void a trial court's judgment based on a claim that the trial judge is biased or prejudiced.'" *State v. Bastawros*, 2024-Ohio-2809, ¶ 17 (8th Dist.), quoting *State v. Frazier*, 2017-Ohio-8307, ¶ 16 (8th Dist.). We note, however, that "[a]lleged due-process violations . . . may be addressed on appeal." *State v. Hunt (In re Thomakos)*, 2020-Ohio-6874, ¶ 4, citing *State v. Jackson*, 2016-Ohio-5488, ¶ 43. *See also Bastawros* at ¶ 19; *State v. Munoz*, 2023-Ohio-1895, ¶ 24 (8th Dist.); *Johnson* at ¶ 101. In that regard, however, Husband's burden is steep. This court has previously held:

> Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Importantly, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. Typically, [a party] must demonstrate the bias through linking the impermissible commentary to the decisions rendered at trial. If the [party] demonstrates that the trial was infected with judicial bias, the remedy is a new trial.

(Cleaned up.) *Bastawros* at ¶ 19. *See also State v. Browning*, 2023-Ohio-1887, ¶ 29 (8th Dist.).

{¶ 64} Viewing the record as a whole, "we see nothing to suggest that the trial court harbored a hostile feeling of ill will toward" Husband. *State v. LaMar*, 2002-Ohio-2128, ¶ 36. The record instead suggests that the trial court, tasked with handling a demonstrably recalcitrant party, met that challenge with restraint. Nothing here suggests a due-process violation.

{¶ 65} Furthermore, as discussed above, Husband filed two affidavits of disqualification. Both were rejected. Pursuant to the authority cited above, we are not permitted to second guess the chief justice's determinations on the affidavits of disqualification.

{¶ 66} Husband's fifth assignment of error is overruled.

### D. Division of Assets in Judgment Entry of Divorce

{¶ 67} In his sixth assignment of error, Husband argues that the final divorce decree and division of property was inequitable. We find no merit to this assignment of error.

{¶ 68} "'Trial courts have broad discretion in deciding appropriate property awards in divorce cases.'" *Hunter*, 2025-Ohio-366, at ¶ 88 (8th Dist.), quoting *Bostick v. Bostick*, 2008-Ohio-5119, ¶ 19 (8th Dist.), citing *Berish v. Berish*, 69 Ohio St.2d 318, 319 (1982). Accordingly, "'[a]n appellate court yields broadly to a trial court's division of marital property.'" *Hunter* at ¶ 88, quoting *Glover v. Glover*, 2009-Ohio-5742, ¶ 10 (2d Dist.).

{¶ 69} This court "generally review a trial court's determination in domestic relations cases for an abuse of discretion." *Hunter* at ¶ 63, citing *Holcomb v. Holcomb*, 42 Ohio St.3d 128, 130 (1989). In *Hunter*, we noted that "[d]omestic relations courts must have discretion to do what is equitable upon the facts and circumstances of each divorce case." *Hunter* at ¶ 63, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989).

{¶ 70} As we noted in discussing Husband's first assignment of error, a trial court "abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority." *Hunter* at ¶ 64, citing *Abdullah*, 2021-Ohio-3304, at ¶ 35. "The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Hunter* at ¶ 64. Furthermore, where the trial court record "contains competent, credible evidence to support the trial court's decision," there is no abuse of discretion. *Hunter* at ¶ 64, citing *Trolli v. Trolli*, 2015-Ohio-4487, ¶ 29 (8th Dist.). We are not permitted to substitute our judgment for the judgment of the trial court. *Hunter* at ¶ 64, citing *Vannucci v. Schneider*, 2018-Ohio-1294, ¶ 22 (8th Dist.).

{¶ 71} This court has recently reiterated that R.C. 3105.171(E)(4) "provides that if a spouse has engaged in financial misconduct, including but not limited to the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." *Anderson-Fye v. Mullinax-Fye*, 2024-Ohio-5909, ¶ 94-95 (8th Dist.), citing *A.E. v. J.E.*, 2024-Ohio-1785, ¶ 28 (8th Dist.). "'The distributive award concept is consistent with the well-established principle that trial courts have broad discretion when creating an equitable division of property in a divorce proceeding.'" *Strauss v. Strauss*, 2011-Ohio-3831, ¶ 39 (8th Dist.), quoting *Adams v. Chambers*, 82 Ohio App.3d 462, 466 (12th Dist. 1992); *La Spisa v. La Spisa*, 2023-Ohio-3467, ¶ 72 (8th Dist.) (same).

**{¶ 72}** "The complaining spouse bears the burden of proving the financial misconduct." *Anderson-Fye* at ¶ 94, citing *A.E.* at ¶ 28, citing *Victor v. Kaplan*, 2020-Ohio-3116, ¶ 138 (8th Dist.). "'A spouse commits "financial misconduct" where he or she engages in intentional conduct by which he or she either profits from the misconduct or intentionally defeats the other spouse's interest in marital assets.'" *A.E.* at ¶ 29, quoting *Victor* at ¶ 138, citing *Rodgers v. Rodgers*, 2017-Ohio-7886, ¶ 30 (8th Dist.).

**{¶ 73}** Here, the trial court's judgment decree of divorce references the "marital waste" flowing from Husband's financial misconduct throughout the course of the proceedings. The court noted, for example, that Husband failed to provide discovery regarding the status of the marital home, failed to comply with the trial court's order to sell the property, and failed to vacate the marital home as ordered. The trial court therefore ordered that any proceeds from the sale of the home (which was then in foreclosure) be awarded in their entirety to Wife.

**{¶ 74}** Even more compellingly, the trial court discussed Husband's attempt to sell the Fairview Park condominium unit without Wife's consent and in direct contravention of the mutual restraining order issued at the inception of the case. As discussed above, the record indicates Husband was deliberately deceptive in this regard. A printout attached to one of Wife's many affidavits indicated that Husband wrote to her, through the Our Family Wizard platform: "I am not going to sell" the Fairview Park condo. The record reflects that this was untrue and that the property had been listed for sale.

{¶ 75} The trial court noted the distributions already made from the net proceeds of the sale. It then explicitly found that "the remaining proceeds are marital in nature." While Husband argues in his brief that Wife did not contribute to the upkeep of the condo unit, Wife testified at trial that they had treated the condo as a marital asset, with the mortgage paid using marital funds. Husband did not appear at trial to present evidence that the condo should be considered separate property. In awarding the remaining proceeds to Wife, the trial court explicitly referenced "the conduct of the [Husband] and his flagrant disregard for Court orders," which caused Wife to incur attorney fees through a multitude of show-cause motions. It therefore found that "a distributive award is equitable and appropriate as compensation for the financial misconduct" of Husband. We find and conclude that a distributive award was supported by competent, credible evidence and that the trial court did not abuse its discretion in this regard.

{¶ 76} The trial court also issued extensive findings regarding the parties' retirement assets and how they were to be divided. Husband makes no detailed arguments with respect to the division of retirement assets; instead, he offers conclusory statements. Rather than delve into the specifics of the trial court's division and propose one or more alternatives, Husband argues he has been "left at a disadvantage" with respect to his future financial security. Husband cites *Hoyt v. Hoyt*, 53 Ohio St.3d 177 (1990), in which the Ohio Supreme Court held that in considering a pension or retirement fund, "the trial court must make an equitable determination based upon the parties' overall financial situation." *Id.* at 181. This

court has recently noted that "[t]he court in *Hoyt* emphasized," however, that "when considering pension or retirement benefits, a trial court must be given discretion and flat rules have no place in determining a property division." *Karabogias v. Zoltanski*, 2023-Ohio-227, ¶ 18 (8th Dist.).

{¶ 77} Husband complains that the trial court failed to take into account "the long-term financial impact" the division of retirement assets would have on him or his "future financial needs." Again, however, Husband fails to provide specific arguments. *See Rodriguez v. Rodriguez*, 2009-Ohio-3456, ¶ 7 (8th Dist.) ("[I]t is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error."); *In re Q.S.*, 2023-Ohio-712, at ¶ 103, (8th Dist.). *See also Story v. Story*, 2021-Ohio-2439, ¶ 30 (8th Dist.) (appellate court not obligated to construct or develop arguments for appellant or to guess at undeveloped claims); *Strauss*, 2011-Ohio-3831, at ¶ 72 (8th Dist.) ("'If an argument exists that can support this assigned error, it is not this court's duty to root it out.'"), quoting *Cardone v. Cardone*, 1998 Ohio App. LEXIS 2028, *22 (9th Dist. May 6, 1998).

{¶ 78} Husband also ignores the fact that he failed to appear for trial and present evidence or arguments regarding his "future financial needs." Moreover, he neglects to consider at least two findings by the trial court with respect to retirement assets, both supported by the record: First, Husband failed to respond to discovery, including financial information that might have shed light on his future financial needs. The relevant retirement account information instead came in the form of

subpoena responses to financial institutions. The trial court noted in its final decree of divorce that "[Wife] issued subpoenas to obtain more information relative to [Husband]'s retirement benefits based on [Husband]'s non-compliance with discovery." Second, the trial court found that Husband "may have liquidated several of his retirement benefits during these proceedings in contradiction to the Court's Mutual Restraining Orders." The trial court cited certain deposits made to two of Husband's bank accounts that were forensically linked to retirement accounts.

{¶ 79} As noted above, the trial court made detailed and extensive findings regarding retirement assets, delving into the extent various accounts constituted marital property and an appropriate division. Based in large part on Husband's financial misconduct, it ordered that Wife be permitted to retain her retirement benefits and receive an "equitable distribution" of Husband's remaining retirement assets.

{¶ 80} In that regard, the trial court did not simply award everything to Wife. It ordered that Husband would "receive the entirety of his retirement benefits held through" Cleveland Clinic and Millennium trust accounts, "free and clear" of any claims by Wife. It found equal division of Husband's Fidelity Rollover IRA, CC SIP 403(b) plan, and his University Hospitals 403(b) retirement plan to be equitable.

{¶ 81} The trial court ultimately acknowledged that the overall division of property, "though not equal, is equitable." It again cited Husband's "actions throughout the within proceeding," including his "failure to disclose assets" and his

"attempts to otherwise conceal, dissipate and/or dispose of [marital] property during the within proceedings."

{¶ 82} "'A trial court has broad discretion in a divorce proceeding to fashion an award that compensates a spouse for the financial misconduct of the other spouse.'" *La Spisa*, 2023-Ohio-3467, at ¶ 78 (8th Dist.), quoting *Buskirk v. Buskirk*, 2023-Ohio-70, ¶ 37 (8th Dist.). In *La Spisa*, we cited "the unique circumstances in [that] case" in finding that the trial court did not abuse its broad discretion by making a distributive award. *La Spisa* at ¶ 79. Upon review of the entire record herein, and in light of the unique circumstances involved in these proceedings, we likewise find no abuse of discretion by the trial court in the division of property.

{¶ 83} Husband also challenges the trial court's award of $20,000 in attorney fees. Pursuant to R.C. 3105.73(A), a domestic relations court "may award all or part of reasonable attorney's fees to either party if the court finds the award equitable." This court has held that "[t]here are no 'automatic attorney fees' in domestic relations cases, and when determining whether to award attorney fees in divorce cases, 'the court must start with a presumption that attorney fees are the responsibility of the party who retains the attorney.'" (Cleaned up.) *A.A.O. v. A.M.O.*, 2022-Ohio-2767, ¶ 58 (8th Dist.), quoting *Victor*, 2020-Ohio-3116, at ¶ 127 (8th Dist.).

{¶ 84} "In determining whether an award of fees is equitable, the court may consider 'the parties' marital assets and income, any award of temporary spousal support, *the conduct of the parties*, and any other relevant factors the court deems

appropriate.'" (Emphasis added.) *Saks v. Riga*, 2014-Ohio-4930, ¶ 89 (8th Dist.), quoting R.C. 3105.73(A). "It is well-established that an award of attorney fees is within the sound discretion of the trial court." *Rand v. Rand*, 18 Ohio St.3d 356, 359 (1985); *see also A.A.O.* at ¶ 58, citing *Saks* at ¶ 89 (8th Dist.).

{¶ 85} The trial court ordered Husband to pay attorney fees in the amount of $20,000 "as additional property division." The trial court included a detailed discussion of its rationale:

> Within this matter, Plaintiff filed several show cause motions, including to compel discovery responses, violation of the Court's Mutual Restraining Orders, evidence of mortgage payments and communication between the parties. For each show cause motion, Plaintiff incurred attorney fees. At trial, Defendant failed to appear and as such did not deny his failure to comply with discovery as well as court orders. Defendant failed to provide evidence or testimony as to why he failed to comply with Court orders. The Court at this time will not hold Defendant in contempt.
>
> [Plaintiff's] Attorney . . . testified regarding his attorney fees. The Court finds [Plaintiff's] Attorney . . . has practiced law in excess of twenty-three years; reviews all invoices and charges billed to his client; bills at an hourly rate that complies with ordinary practice for counsel in their area and is commensurate to experience level. The Court finds, based on the evidence and testimony presented, Plaintiff has incurred approximately $35,601.00 in attorney fees, preparing for trial as well as filing multiple show cause motions related to Defendant's failure to abide by discovery orders and other court orders. The Court finds Plaintiff is awarded attorney fees in the amount of $20,000.00 as additional property division.

{¶ 86} The trial court not only provided ample justification for the fee award but even trimmed the total by $15,601, a substantial reduction of approximately 43 percent. In light of Husband's well-documented behavior during the course of the underlying proceedings, we find no abuse of discretion in the fee award.

{¶ 87} Husband's sixth assignment of error is overruled.[10]

{¶ 88} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

EILEEN A. GALLAGHER, A.J., and
MICHAEL JOHN RYAN, J., CONCUR

---

[10] Husband's notice of appeal included the trial court's entry denying his motion for a new trial. Husband, however, has not separately assigned error with respect to the trial court's decision or otherwise raised arguments regarding the denial of his motion for a new trial. "Assignments of error should designate specific rulings which the appellant wishes to challenge on appeal." *State v. Pointer*, 2005-Ohio-3587, ¶ 5 (8th Dist.). In addition, "[a]n appellate court has the discretion to disregard any error not separately assigned and argued." *Id. See also Hawes v. Downing Health Technologies L.L.C.*, 2022-Ohio-1677, ¶ 35 (8th Dist.) ("[A] court of appeals is not required to consider errors that were not separately assigned and argued."); *Hudson & Keyse LLC v. Sherrills*, 2022-Ohio-126, ¶ 12 (8th Dist.) (same); *Skalsky v. Cvelbar*, 2000 Ohio App. LEXIS 592, *2 (8th Dist. Feb. 16, 2000) (same). We nevertheless note that upon review of Husband's motion for a new trial, Wife's opposition, and the trial court's entry denying Husband's motion, the issues are intertwined with and disposed of by our resolution of Husband's assignments of error. Because we have overruled all of Husband's assignments of error, those dispositions render any challenge to the trial court's ruling on the motion for new trial moot. App.R. 12(A)(1)(c); *Rex v. Conner*, 2003-Ohio-4561, ¶ 80-82 (8th Dist.).